Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
**BERMAN DeVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com
        aphillips@bermandevalerio.com

*Proposed Interim Liaison Counsel for Plaintiffs*

Michael J. Boni (Admitted 09/11/92)
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206
Email: MBoni@bonizack.com

*Proposed Interim Co-Lead Counsel for Plaintiffs*

[Add'l Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE APPLE IN-APP PURCHASE LITIGATION** | Master File No. 11-cv-1758 JF |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |
| **This document relates to:** | |
| **ALL ACTIONS** | JURY TRIAL DEMANDED |

## ISSUES TO BE DECIDED
### (Local Rule 7-4(a)(3))

1. Whether Plaintiffs have stated a claim for declaratory relief, having alleged that Apple's sales to minors of Game Currency constitute voidable contracts.

2. Whether Plaintiffs' allegations concerning Apple's actions to induce children to purchase Game Currency without the knowledge or permission of their parents state a claim under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.

3. Whether Plaintiffs' allegations concerning Apple's actions, including deceptive representations and omissions, to induce children to purchase Game Currency without the knowledge or permission of their parents state a claim under California's Unfair Competition Law, Business & Professions Code § 17200 *et seq*.

4. Whether Plaintiffs' detailed allegations concerning Apple's bad faith and unfair dealing state a claim for breach of the covenant of good faith and fair dealing with respect to Apple's Terms & Conditions.

5. Whether Plaintiffs' complaint states a valid cause of action for unjust enrichment.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................... 1

III. ARGUMENT ........................................................................................................... 4

    A. LEGAL STANDARD ................................................................................... 4

    B. THE COMPLAINT STATES A VALID CLAIM UNDER THE DECLARATORY JUDGMENT ACT ...................................................... 5

        1. Minors' Purchases of Game Currency Are Contracts with Apple. ............................................................................................. 5

        2. A Minor's Game Currency Contract May Be Disaffirmed by Plaintiffs. ......................................................................................... 8

    C. THE COMPLAINT ADEQUATELY ALLEGES THAT APPLE VIOLATED CALIFORNIA'S UNFAIR COMPETITION LAW AND CONSUMER LEGAL REMEDIES ACT ........................................ 9

        1. Applicable Pleading Standard for UCL Claims ................................. 9

        2. The Complaint Adequately Alleges Unfair and Unlawful Business Practices under the UCL. ................................................. 10

            a. Unfair Business Practices ........................................................ 10

            b. Unlawful Business Practices .................................................. 12

        3. Plaintiffs' Claims for Relief Have Been Pled with Sufficient Particularity .................................................................. 12

            a. Plaintiffs Describe the Specific Representations and Omissions to Which They Were Exposed. ............................ 13

            b. Plaintiffs Sufficiently Allege Reliance and Causation. ............................................................................... 15

                (1) Reliance ..................................................................... 15

                (2) Causation .................................................................. 16

        4. Plaintiffs Have Met the Procedural Requirements of the CLRA. ........................................................................................... 17

            a. Plaintiffs Filed the Affidavit Required Under Section 1780(d) ................................................................... 17

            b. Plaintiffs Provided Timely Notice Under Section 1782(a) ...................................................................... 17

D.  PLAINTIFFS HAVE PLED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ................................................................................................ 18

E.  PLAINTIFFS' COMPLAINT STATES A VALID CAUSE OF ACTION FOR UNJUST ENRICHMENT. ................................................................. 21

IV.  CONCLUSION ................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*3W s.a.m. tout bois v. Rocklin Forest Prods., Inc.*, No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735 (E.D. Cal. Feb. 7, 2011) .............................................. 22

*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.* , 852 F.2d 493 (9th Cir. 1988) .................................. 7

*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................ 14

*A-R Int'l Anti-Fraud Sys. v. Pretoria Nat'l Cent. Bureau of Interpol*, 634 F. Supp. 2d 1108 (E.D. Cal. 2009) .................................................................... 5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 5

*Berg v. Traylor*, 148 Cal. App. 4th 809 (2007) ....................................................... 8

*Blennis v. Hewlett-Packard Co.*, No. C 07-00333 JF, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008) ................................................................................ 21

*Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006) ...................................... 11

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992) ................. 18, 19, 20

*City of Oakland v. Hotels.com LP*, 572 F.3d 958 (9th Cir. 2009) .......................................... 18

*Clerkin v. MyLife.com, Inc.*, No. C 11-00527 CW, 2011 WL 3607496 (N.D. Cal. Aug. 16, 2011) ................................................................................ 21

*Daro v. Super. Ct.*, 151 Cal. App. 4th 1079 (2007) ................................................... 16

*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) ............................... 15

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998) ..................................................... 14

*Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ................................................................................ 18

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................... 14

*Fed. Deposit Ins. Co. v. Dintino*, 167 Cal. App. 4th 333 (2008) ........................................ 21

*Fields v. QSP, Inc.*, No. CV 10–5772 CAS (SSx), 2011 WL 1375286 (C.D. Cal. Apr. 8, 2011) ................................................................................. 20

*First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657 (1992) ...................................... 21

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) ............................................... 19

*Galindo v. Financo Fin., Inc.*, No. C 07-3991 WHA, 2008 WL 4452344 (N.D. Cal. Oct. 3, 2008) ................................................................................ 18

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) ....................................................... 21

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ..............................................5

*Gutierrez v. Girardi*, 194 Cal. App. 4th 925 (2011) .......................................................21

*Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 U.S. Dist.
LEXIS 9962 (N.D. Cal. Feb. 2, 2011) .................................................................10, 11

*Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114 (9th Cir. 2009) ...............................9

*Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK (VBKx), 2011 U.S. Dist.
LEXIS 27953 (C.D. Cal. Mar. 17, 2011) ....................................................................17

*Hirsch v. Bank of Am., N.A.*, 107 Cal. App. 4th 708 (2003) .........................................21

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW,
2011 WL 2847418 (N.D. Cal. July 18, 2011) .........................................................12, 14

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, MDL No. 2032, 2009
U.S. Dist. LEXIS 108636 (N.D. Cal. Nov. 20, 2009) ..................................................20

*In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159 (S.D. Cal. 2010)............................17

*In re Facebook PPC Adver. Litig.*, Nos. 5:09-cv-03043-JF,5:09-cv-03519-
JF,5:09-cv-03430-JF, 2010 U.S. Dist. LEXIS 87769 (N.D. Cal. Aug. 25,
2010) ...............................................................................................................10

*In re Ferrero Litig.*, No. 11-cv-205 H (CAB), 2011 U.S. Dist. LEXIS 70629 (S.D.
Cal. June 30, 2011) ...............................................................................................14

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .....................................................15, 16

*In re Yahoo! Litig.*, 251 F.R.D. 459 (C.D. Cal. 2008) .................................................20

*Indymac Fed. Bank v. PMI Mortg. Ins. Co.*, No. C 08-04303 WHA, 2009 U.S.
Dist. LEXIS 14837 (N.D. Cal. Feb. 11, 2009) ...........................................................20

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ...............................................................4

*Johnson v. Harley-Davidson Motor Co. Group, LLC*, No. 2:10-cv-02443 JAM-
EFB, 2011 WL 3163303 (E.D. Cal. Jul. 22, 2011) .....................................................22

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002).........................................................9, 12

*Katz v. Cal-W. Reconveyance Corp.*, No. 5:09-cv-04866-JF, 2010 U.S. Dist.
LEXIS 13385 (N.D. Cal. Jan. 27, 2010) ..................................................................11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2008) ....................................10, 11, 12

*Keilholtz v. Super. Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076 (N.D.
Cal. Mar. 30, 2009)...............................................................................................18

*Kinderstart.com LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2006 U.S. Dist.
LEXIS 82481 (N.D. Cal. July 13, 2006) ...................................................................20

*Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist.
LEXIS 89379 (N.D. Cal. Aug. 10, 2011)...................................................................15

*Kwikset Corp. v.Super. Ct.*, 51 Cal. 4th 310 (2011) ...............................................16

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ..........................................21

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)...................................................14

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ....................11

*Lucas v. Dep't of Corr.*, 66 F.3d 245 (9th Cir. 1995).................................................5

*Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999)................................19

*McDonald v. Coldwell Banker*, 543 F.3d 498 (9th Cir. 2008) ..................................10

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008)..................4

*Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) ...........................................16

*Mozaffarian v. Breitling U.S.A.*, No. C 94-1133 SI, 1998 U.S. Dist. LEXIS 19124
    (N.D. Cal. Nov. 19, 1998) ......................................................................................6

*Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983 (2010) ....................................16

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*, No. 08-CV-04119 LHK, 2011 U.S.
    Dist. LEXIS 21166 (N.D. Cal. Mar. 2, 2011) .......................................................9

*Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33
    (1968) ......................................................................................................................7

*Peel v. BrooksAmerica Mortgage Corp.*, No. 8:11-cv-0079-JST (RNBx), 2011
    U.S. Dist. LEXIS 60618 (C.D. Cal. June 1, 2011) .............................................11

*Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2009
    U.S. Dist. LEXIS 123329 (C.D. Cal. Dec. 21, 2009)...........................................16

*Postier v. La.-Pac. Corp.*, No. C-09-3290 JCS, 2009 U.S. Dist. LEXIS 95060
    (N.D. Cal. Oct. 13, 2009) .....................................................................................17

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)...........................21, 22

*Saunders v. Super. Ct.*, 27 Cal. App. 4th 832 (1994) ..............................................11

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001).................11

*State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093 (1996) ...............11

*Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153 (1991) ...............13

*The People ex. rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508
    (2002) ....................................................................................................................14

*Tietsworth v. Sears, Roebuck and Co.*, No. 5:09–CV–00288 JF (HRL), 2009 WL
    3320486 (N.D. Cal. Oct 13, 2009) ...................................................................15, 16

*Vectren Commc'ns Servs. v. City of Alameda*, No. C 08-3137 SI, 2009 U.S. Dist.
    LEXIS 72811 (N.D. Cal. Aug. 18, 2009) (S.D. Cal. Aug. 18, 2009).....................19

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)........................................10, 12

*Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107 (2008) ..........................19

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................................................9

Cal. Civ. Code § 1605 ..................................................................................................7

Cal. Civ. Code § 1780(d)............................................................................................17

California Family Code § 6710 ...................................................................................5, 8

*Goldberg v. Super. Ct.*, 23 Cal. App. 4th 1378 (1994)..................................................8

**OTHER AUTHORITIES**

William L. Stern, *Bus. & Professions Code, § 17200 Practice* 10:2, p. 10-1 (The
Rutter Group 2011)..................................................................................................12

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................................................10

## I.  INTRODUCTION

Plaintiffs submit this brief in opposition to Defendant Apple Inc.'s Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint, ECF No. 37 ("MTD").[1]  For the reasons set forth below, Apple's motion should be denied in its entirety.[2]

## II.  STATEMENT OF FACTS

Apple is a market leader in the manufacture, marketing and sale of computers and computing devices.  Apple is also the leading seller of software applications that users download on mobile computing devices ("Apps").  Among the many thousands of Apps that Apple offers for sale are gaming Apps targeted at children.  Although numerous gaming Apps are offered by Apple for free and may be downloaded at no cost,[3]  many other games are designed to induce children to purchase virtual supplies, ammunition, fruits and vegetables, cash and other fake "currency," within the game ("Game Currency").  (Apple blandly refers to this Game Currency as In-App Purchases or In-App Content.) (¶ 1.)  Because these gaming Apps are free to download, but can cost hundreds of dollars in Game Currency to play, these games are referred to below as "Bait Apps."

The sale of Game Currency to minors is highly lucrative to Apple.  Bait Apps are designed deliberately to be highly addictive and to entice children to purchase large quantities of Game Currency for as much as $100 per transaction or more.  (*Id.*)  The five Plaintiffs alone were charged more than $1,170 for Game Currency.  (¶ 8 (Meguerian paid $200), ¶ 9 (Scott paid $108.24), ¶ 10 (Koffman paid $668.59), ¶ 11 (Silversmith paid $99.99) and ¶ 12 (Monroe paid $99.99).)

Anyone thirteen years old or older can open an account to purchase (i.e., license) Apps from Apple.  Opening an account includes selecting a user name and password, providing contact information, and agreeing to Apple's unilaterally drafted, boilerplate Terms & Conditions (which exceed 40 screen pages on an iPhone).  (¶¶ 20, 84.)  Users may then make purchases in a number of

---

[1] Plaintiffs' Consolidated Class Action Complaint ("CCAC" or "Complaint"), ECF No. 28, is cited herein as "¶ _."

[2] Apple has requested that the Court take judicial notice of Apple's Terms and Conditions ("T&Cs"). Plaintiffs do not object to the Court considering the T&Cs.  However, for the reasons set forth herein, Apple's T&Cs provide no basis for dismissing Plaintiffs' claims.

[3] Some Bait Apps may cost a nominal amount, e.g., 99 cents.  (¶ 58.)

ways, most frequently by supplying Apple with a credit or debit card number or PayPal account, from which Apple automatically draws funds. (¶ 20.)

Apple requires its users to enter a password prior to purchasing and/or downloading an App or buying Game Currency. Until recently, however, once the password was entered, Apple permitted the user, even if a minor, to buy Game Currency for up to fifteen minutes without re-entering the password. This practice enabled minors to buy as much Game Currency as they cared to click on **for fifteen minutes at a time without entering a password**, causing Apple to pocket millions of dollars from such Game Currency transactions with children, without the knowledge or permission of their parents, whose credit cards or PayPal accounts are automatically charged for the purchases. (¶¶ 3, 21.)

This pernicious business model targets very young children. (¶¶ 1, 2, 4, 16, 23-26, 28, 31.) "Smurfs' Village," for example, indicates that it is designed for ages 4-plus. (¶ 25.) The object of this game is to build a virtual village, and the construction process is accelerated by the purchase of "Smurfberries." Prominently displayed in this Bait App is the "Smurfberry Shop," which offers for sale, e.g., fifty Smurfberries at $4.99, 1,000 Smurfberries at $59, and 2,000 Smurfberries at **$99.99**. (¶ 24.) *See* following screen shots (*id.*):







Smurfs' Village is a prime example of Apple's bait-and-switch business scheme. Apple entices the parent and child with a "free" download of a gaming Bait App. This "free" game then offers to children irresistible Game Currency (Smurfberries to build a Smurfs' village) in order to play the game as it was designed to be "played." The child can only make painstakingly slow progress in the game unless Game Currency is purchased. If the child purchases Game Currency, however, the child can build the village quickly. All it takes is a click on a wheelbarrow or wagon overflowing with Smurfberries. (¶¶ 24-28.)

Smurfs' Village is just one of many Bait Apps. Others include "Bakery Story" (which sells virtual gems used to acquire items for the virtual bakery), "Treasure Story" (which sells virtual gems),

"City Story" (which sells virtual cash), "Tap Fish" (which sells virtual "fish bucks"), "Glass Tower" (which sells virtual "level packs"), "Sundae Maker" (which sells virtual ice cream and toppings), "Cake Maker" (which sells virtual cake ingredients), and Tap Zoo (which sells virtual pouches and vials of coins and stars).[4] (¶¶ 28-30; *see also* ¶¶ 8-12.)

In its motion to dismiss, Apple does not deny that it engages in this exploitive business practice. Yet Apple has not offered to return to its account holders any of the millions of dollars it received from its sale of Game Currency. (¶ 32.) Instead, it shifts blame to the parents, while knowing full well that parents routinely hand their mobile phones to children during car rides or while dinner is made, etc. In fact, Apple's business model depends entirely on parents' letting their children play on their devices without their active supervision. Targeting young children and inducing them to purchase millions of dollars of Game Currency without the knowledge or permission of their parents is unlawful exploitation in the extreme.[5] (¶ 31.)

## III. ARGUMENT

### A. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

---

[4] What is particularly egregious about Tap Zoo is that the "store" lists items for sale, **but does not display how much the items cost**. That only occurs when a confirmation window is displayed. (¶ 29.) *See* ¶ 29 of the CCAC for screenshots of Tap Zoo, whose graphics, like Smurfs' Village, are designed to lure very young children to purchase Game Currency.

[5] Apple defends its practice by comparing it to a parent handing a child a "roll of quarters" at an arcade, or by characterizing Game Currency as no different from physical video game "enhancements." MTD at 1. These comparisons are inapt. A roll of quarters is a fixed amount of money a parent knowingly provides their child. Video game enhancements are tangible goods that parents can examine and choose to buy for their children at fixed prices. Bait Apps, in contrast, appear "free" to the parent to reach the intended target, their child, where the parent has not made pre-fund purchases for the child. Instead, the Game Currency is offered for the first time while the child is already in the Bait App, after the parent completes the initial "free" download, with no limitation on spending other than those set by the credit or debit card.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  A plaintiff's factual allegations need only "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, "[t]he Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## B.  THE COMPLAINT STATES A VALID CLAIM UNDER THE DECLARATORY JUDGMENT ACT

Apple fails to present any support for its motion seeking to dismiss Plaintiffs' well-pled allegation that minors formed voidable contracts with Apple each time they purchased Game Currency.  Such contracts are separate from the T&Cs accepted by parents, and are voidable under California law.  In addition, Apple's contention that only a minor, no matter how young—and not the minor's parent or guardian—can disaffirm a contract is based on a misconstruction of California Family Code § 6710.

### 1.  Minors' Purchases of Game Currency Are Contracts with Apple.

Under California law, in order for a contract to be formed, there must be an offer, an acceptance, and consideration.  *See A-R Int'l Anti-Fraud Sys. v. Pretoria Nat'l Cent. Bureau of Interpol*, 634 F. Supp. 2d 1108 (E.D. Cal. 2009).  Here, plaintiffs allege that (1) Apple offers to sell Game Currency to minors playing Bait Apps, (2) the minors accept Apple's offer by clicking on buttons to purchase Game Currency, and (3) the transactions are supported by consideration, i.e., the exchange of Game Currency for real currency.  Thus, plaintiffs have alleged facts supporting a finding that each such purchase and sale of Game Currency is a contract between Apple and a minor.

Apple attempts to cloud the issue by arguing that the contracts at issue here are the T&Cs that everyone must click in order to open an Apple account.  MTD at 7.  Plaintiffs' claim, however, is not

1 | based on the T&Cs.  Rather, the subject of Plaintiffs' declaratory relief claim is each contract for Game

2 | Currency between Apple, as seller, and the minor, as purchaser.[6]

3 | Apple's attempt to avoid liability for its sale of Game Currency to minors by referring to its 40-

4 | plus screen page of T&Cs is ironic, to say the least.  As the screenshots reproduced above plainly show,

5 | Apple knowingly targets its Bait Apps to children who are far too young to read and understand

6 | Apple's T&Cs.  Moreover, the T&Cs themselves are subject to interpretation, and cannot form the

7 | basis of a motion to dismiss.  Apple relies on provisions directing accountholders to maintain the

8 | "confidentiality and security of your Account," and providing that it is the accountholder, and not

9 | Apple, who will be responsible for "any losses arising out of the unauthorized use of your Account."

10 | Declaration of Stuart C. Plunkett, ECF No. 37-1 ("Plunkett Decl.") Ex. A at 3, 8; MTD at 7.[7]

11 | Apple's position that a child's purchase of Game Currency is an insecure or "unauthorized use"

12 | of his or her parent's account is undercut by the very nature of the Bait Apps themselves.  Bait Apps

13 | are targeted at children, intended to be played by children, and designed to induce children to purchase

14 | Game Currency after the parent downloads the "free" Bait App.  At a minimum, the meaning and

15 | application of these terms is ambiguous in this context, and Plaintiffs should be able to introduce

16 |

---

[6] The T&Cs are not the "contracts" at issue.  They are merely general terms and conditions that Apple unilaterally imposes on its accountholders.  They lack such essential terms as the goods or services being purchased, the date of such purchases and the price of such purchases.  The T&Cs describe "in-app purchases" as "functionality that enables you to purchase additional services, or licenses to additional functionality or content."  Such language itself contemplates new contracts being formed.  To dodge these fatal problems with its argument, Apple analogizes its T&Cs to requirements contracts, where the T&Cs "govern the parties' relationship, including all purchases made using an iTunes account."  (MTD at 8.)  Apple's sales transactions with young children are not remotely analogous to requirements contracts, or any type of relational contract.  The parties to a requirements contract have a meeting of the minds that the buyer needs all the goods the seller can supply, and the seller will supply such goods.  *Mozaffarian v. Breitling U.S.A.*, No. C 94-1133 SI, 1998 U.S. Dist. LEXIS 19124, at *25 (N.D. Cal. Nov. 19, 1998).  In contrast, there is no meeting of the minds between Apple and its accountholders that Apple will target and sell to the accountholder's young children hundreds of dollars of Smurfberries.

[7] In addition to lacking support in the case law, Apple's argument is undermined by a key factual allegation.  Prior to early 2011, there was a fifteen-minute window during which Apple did not require the entry of a password for the purchase of Game Currency.  Apple did not warn parents that under such circumstance their child could purchase Game Currency for fifteen minutes without any supervision, oversight or permission. (¶ 21; *see also id.* ¶¶ 3-4, 22, 26.)  As Game Currency could in fact be readily purchased by a minor without entering a password, Apple's argument that the T&Cs warn parents to keep their passwords secret plainly has no bearing on those purchases made during the fifteen-minute window.

extrinsic evidence to show that, far from being an "unauthorized" or insecure use of an Apple account, the purchase by minors of Game Currency is expressly contemplated and intended—indeed, desired—by Apple. *See Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968) (Traynor, C.J.) ("[T]he meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words.'" (citations omitted)); *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 497 (9th Cir. 1988) (under California law, "*courts may not dismiss on the pleadings* when one party claims that extrinsic evidence renders the contract ambiguous" and "[t]he case must proceed beyond the pleadings so that the court may consider the evidence.") (emphasis added).

Apple next contends that it did not enter into individual sales contracts for the purchase of Game Currency with minors, because the contractual elements of offer and consideration are allegedly lacking (Apple concedes that acceptance was made by the minors, MTD at 8). While Apple contends that it made no offers to minors, the Complaint alleges more than sufficient facts to establish the contrary: Apple targeted children with offers to purchase Game Currency in Bait Apps. (¶¶ 1, 2, 4, 16, 23-26, 28, 31.) Further, the transactions plainly involved an exchange of consideration. The minor received Game Currency from Apple and Apple took payment from the parents' credit card or Paypal account. (¶¶ 3, 19-20.) Apple's lone challenge to the exchange of consideration is that it was paid by Plaintiffs, rather than their minor children. Apple cites no authorities in support of its argument, and California law holds to the contrary. "Good consideration" is defined under California law to include "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, **by any other person**." Cal. Civ. Code § 1605 (emphasis added).

All of the elements necessary to form a contract between Apple and the Plaintiffs' minor children have therefore been sufficiently alleged.[8]

---

[8] Apple contends that, even if the minors disaffirm their Game Currency purchase contracts, the parents are still liable to Apple for such purchases pursuant to the T&Cs. This argument assumes the T&Cs require Apple's customers to pay for goods and services no matter what facts surround the individual purchase transactions. The T&Cs cannot be so construed, and Plaintiffs are entitled to present evidence that Apple's course of dealing with its accountholders is not to require them to pay for all contested charges.

## 2. A Minor's Game Currency Contract May Be Disaffirmed by Plaintiffs.

A party—like Apple—that "provides [a minor] with goods and services proceeds at his own risk." *Goldberg v. Super. Ct.*, 23 Cal. App. 4th 1378, 1383 (1994). Under California law:

> "The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor 'for his protection against his own improvidence and the designs of others.' It is the policy of the law to protect a minor against himself and his indiscretions and immaturity **as well as against the machinations of other people** and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract."

*Berg v. Traylor*, 148 Cal. App. 4th 809, 818 (2007) (emphasis added) (citations omitted). Apple does not challenge this black letter law, but instead asserts that, as a matter of standing, it is the minor, not the parent, that has the power to disaffirm.

The relevant statute, California Family Code section 6710 states:

> Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.

In the context of the statute's purpose, the phrase "a contract of a minor may be disaffirmed by a minor" means that the contract is subject to disaffirmance *only* by the minor, and not by the (non-minor) party on the other side of the transaction. The phrase does not require the minor, as opposed to the minor's parent, to disaffirm the minor's contract. To the contrary, the purpose of Section 6710—to protect minors from their own immaturity and the designs of others—would be undercut if it were interpreted to require minors as opposed to their parents to disaffirm improvident contracts.

Here, given the young age of the children entering into the Game Currency contracts, it would be completely untenable to require the minors (some younger than four years old) to knowingly express disaffirmance of these purchases.[9]

---

[9] Apple cites *Berg* to argue that only the minor may disaffirm. There, however, the court did not need to resolve the issue since both the parent and the minor (by his counsel) had disaffirmed. *See* 148 Cal. App. 4th at 820. Nonetheless, if the Court determines that the right to disaffirm somehow lies exclusively with the minor, Plaintiffs should have the opportunity to cure. *See Northstar Fin.*

**C. THE COMPLAINT ADEQUATELY ALLEGES THAT APPLE VIOLATED CALIFORNIA'S UNFAIR COMPETITION LAW AND CONSUMER LEGAL REMEDIES ACT**

Apple challenges the Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") claims against it under the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure. MTD at 12. Specifically, Apple contends that Plaintiffs did not allege: (1) the specific representations or omissions to which they were exposed; or (2) reliance and causation on those representations. *Id*. at 12-15.

Apple both misapprehends the pleading standard for UCL claims and ignores the well-pled allegations of the Complaint, which clearly meet that standard. Plaintiffs allege that Apple made specific representations that the Bait Apps were free, with the intent to induce minors to purchase Game Currency. The Complaint also includes specific allegations concerning each named Plaintiff's reliance on Apple's representations that the Bait Apps were free and how that reliance caused him or her damage. Apple's arguments therefore fail.

### 1. Applicable Pleading Standard for UCL Claims

Apple insists that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." MTD at 12. This is incorrect with respect to claims brought under two of the UCL's three prongs and underestimates both the reach of the UCL and the breadth of Plaintiffs' claims.

The UCL forbids unfair competition and imposes liability via any of three prongs, namely "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL has a "broad scope that allows for violations of other laws to be treated as unfair competition . . . while also sweep[ing] within its scope acts and practices not specifically proscribed by any other law." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002)) (second alteration in original) (quotations omitted).

---

*Advisors, Inc. v. Schwab Invs.*, No. 08-CV-04119 LHK, 2011 U.S. Dist. LEXIS 21166, at *13 (N.D. Cal. Mar. 2, 2011).

Each of the three prongs of the UCL constitutes an independent basis for liability under the UCL. Fraud is not an essential element of a claim for unfair or unlawful business practices. Consequently, claims for unfair or unlawful business practices are assessed under Rule 8. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."). Moreover, where a complaint does allege fraudulent business practice, "only those allegations . . . which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2008).

The Complaint alleges UCL violations based on all three prongs of the UCL. (¶¶ 71-73.) The allegations of unfair and unlawful business practices should be analyzed under Rule 8. Rule 9(b) applies only to the claim of fraudulent business practices. All claims exceed the pleading standard required to survive this motion to dismiss.

### 2. The Complaint Adequately Alleges Unfair and Unlawful Business Practices under the UCL.

To survive a motion to dismiss under Rule 8, Plaintiffs' unfair and unlawful business practice claims need only present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Both claims surpass the notice pleading standard.

### a. Unfair Business Practices

"An unfair business practice is 'one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 U.S. Dist. LEXIS 9962, at *14 (N.D. Cal. Feb. 2, 2011) (quoting *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008)). An unfair business practices claim often arises concurrently with claims for systematic breaches of contract, including breaches of the implied covenant of good faith and fair dealing. *Id*. at *15 ("Plaintiffs have stated a UCL claim of unfair practices via their allegation of a contractual breach of the implied covenant of good faith and fair dealing . . . ."); *In re Facebook PPC Adver. Litig.*, Nos. 5:09-cv-03043-JF,5:09-cv-03519-JF,5:09-cv-03430-JF, 2010 U.S. Dist. LEXIS 87769, at *33 (N.D. Cal. Aug. 25, 2010) (Fogel, J.) ("[A] systematic breach of contract may be an unfair business practice."); *Lozano v. AT&T Wireless*

*Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[T]he 'unfair' practices prong offers an independent basis for relief.").

Like the plaintiffs in *Haggarty* and unlike those in Kearns, upon which Defendant relies, Plaintiffs here have alleged a breach of the implied covenant of good faith and fair dealing.[10]  These allegations support Plaintiffs' UCL claim for unfair business practices independent of any allegations grounded in fraud.

Defendant's conduct also qualifies as an unfair business practice under the UCL because the harm inflicted on consumers by Apple's conduct far outweighs any benefit it conferred.  *Katz v. Cal-W. Reconveyance Corp.*, No. 5:09-cv-04866-JF, 2010 U.S. Dist. LEXIS 13385, at *13 (N.D. Cal. Jan. 27, 2010) (Fogel, J.) ("'Unfair simply means any practice whose harm to the victim outweighs its benefits.'") (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994)); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001) ("The test of whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.") (alteration in original) (internal quotations omitted) (quoting *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103-04 (1996)).

Alternatively, some courts apply a three-part test for unfairness, modeled after the Federal Trade Commission's ("FTC") "section 5" test.  *Peel v. BrooksAmerica Mortgage Corp.*, No. 8:11-cv-0079-JST (RNBx), 2011 U.S. Dist. LEXIS 60618, at *33 (C.D. Cal. June 1, 2011) ("'California appellate courts disagree on how to define an "unfair" act or practice in the context of a [UCL] action.'").  The three elements of the test are (1) substantial harm to the consumer; (2) which outweighs any countervailing benefit; and; (3) which the consumer could not reasonably have avoided.  *Id.* (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).

Either test weighs heavily in Plaintiffs' favor.  On one hand, Plaintiffs incurred thousands of dollars in charges without their knowledge or consent and with no benefit in return.  The utility of Apple's conduct amounted to nothing more than exploiting the unwitting and impulsive actions of

---

[10] The *Kearns* plaintiffs alleged only UCL and CLRA claims based on a fraudulent course of conduct. *Kearns*, 567 F.3d at 1127.

children to line its own coffers.  Consumers could not reasonably have avoided the harm they suffered

because they could not have known that by downloading the Bait Apps they had unwittingly incurred

additional charges for Game Currency.  Both the balancing test and the FTC section 5 test for

unfairness are met based on the allegations of the Complaint.

**b.      Unlawful Business Practices**

The UCL is violated per se, whenever a business practice breaks the law.  *Kasky*, 27 Cal. 4th at

950.  A violation of any law can provide the predicate for a UCL claim.  *Paulus v. Bob Lynch Ford,*

*Inc.*, 139 Cal. App. 4th 659, 681 (2006) ("Virtually any law or regulation—federal or state, statutory or

common law—can serve as [a] predicate for a [UCL] 'unlawful' violation.") (first alteration in

original) (citation omitted).

As noted below, the Complaint sufficiently alleges a claim for Apple's breach of the implied

covenant of good faith and fair dealing.  This violation of California common law also provides the

basis for Plaintiffs' UCL claim for an unlawful business practice.   Moreover, as explained below,

Plaintiffs' CLRA claims also provide an adequate basis for their UCL claims.  William L. Stern, *Bus.*

*& Professions Code, § 17200 Practice* 10:2, p. 10-1 (The Rutter Group 2011) ("A plaintiff who can

plead a CLRA claim will invariably be able to plead a UCL claim . . . .")  Indeed, provided any of

Plaintiffs' other claims survive Defendant's motion to dismiss, the UCL claim for unlawful business

practices must necessarily survive.

**3.      Plaintiffs' Claims for Relief Have Been Pled with Sufficient Particularity.**

Rule 9(b) requires that a complaint must "'be "specific enough to give defendants notice of the

particular misconduct . . . so that they can defend against the charge and not just deny that they have

done anything wrong."'" *Kearns*, 567 F.3d at 1124 (alteration in original) (citations omitted).  This

typically requires a plaintiff to plead "'the who, what, when, where, and how' of the misconduct

charged." *Vess*, 317 F.3d at 1106 (citations omitted).  This requirement is relaxed, however, when, as

here, "the defendant must necessarily possess full information regarding the facts of the

controversy . . . ." *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW,

2011 WL 2847418, at *4 (N.D. Cal. July 18, 2011) (internal quotation omitted) (quoting *Tarmann v.*

*State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991)).  Plaintiffs more than amply satisfy this standard.

Plaintiffs have pled specific facts to support their claim that Apple violated UCL §§ 17200 and 17500 *et seq.* by "actively advertising, marketing and promoting its bait Apps as "free" or nominal with the intent to lure minors to purchase Game Currency in a manner likely to deceive the public." (¶ 72.)  Specifically, Apple represented that certain "Bait Apps" were "free or cost a nominal charge to download" (¶ 23), but "until early 2011" "did not tell parents . . . that their child was then able to purchase Game Currency for fifteen minutes without any supervision, oversight or permission." (*See* ¶¶ 21, 22.)  Because they were represented as free or costing only a nominal charge, each named Plaintiff (or their child) downloaded one or more Bait Apps and permitted their child to use the Bait Apps believing that use of the Bait App was free.  (¶¶ 8-12.)  Through its Bait Apps, Apple then offered Plaintiffs' children (who were each between 3½ and 12 years old) the sale "of irresistible Game Currency in order to enjoy the game as it was designed to be played."  (¶ 28.)  The Bait Apps "were developed strategically to induce purchases of Game Currency" by minors "without the knowledge or permission of their parents" "in order to meet the objectives of the game."  (¶¶ 23, 24, 31.)  Finally, the Complaint alleges that the complained-of transactions occurred "within a span of a few weeks," "within 60 seconds," "within several days," or "two or three days" after Plaintiffs downloaded the Bait App.  (¶¶ 8-10, 12.)

As is clear from these facts and other facts set forth in the Complaint, Plaintiffs have sufficiently alleged the "who, what, when, where, and how" of Apple's violations of the CLRA and UCL.

### a.  Plaintiffs Describe the Specific Representations and Omissions to Which They Were Exposed.

Apple's claim that "Plaintiffs have failed to allege the specific representations or omissions to which they were exposed" (MTD at 12) is belied by the well-pled facts in the Complaint.  Indeed, Plaintiffs have pled with particularity the specific representations or omissions by Apple made through (or omitted from) its iTunes or App Store.  *Facebook PPC Adver.*, 2010 U.S. Dist. LEXIS 87769, at *30 (Plaintiffs should "identify with particularity at least the specific policies and representations that

they reviewed."). Plaintiffs assert that Apple violated the CLRA by "actively marketing and promoting certain gaming Apps as 'free' or nominal with the intent to induce from minors the purchase of Game Currency." (¶ 58.)[11] There are numerous allegations throughout the Complaint averring Defendant's specific representations that the Bait Apps were "free" or cost a nominal charge. (¶¶ 1, 8-12, 24, 26, 28, 30.) Each of these alleged representations is "a specific factual assertion which [can] be established or disproved through discovery." *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005).

A plaintiff may successfully pursue a UCL or CLRA claim based on a fraudulent omission if a "defendant had exclusive knowledge of material facts not known to the plaintiff" or "makes partial representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (internal quotation omitted) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)); *see also Apple and AT&T iPad Unlimited Data Plan*, 2011 WL 2847418, at *4 (allegations of specific information concealed sufficient to state a claim). The Complaint clearly alleges that Apple breached this duty to disclose. According to the Complaint, Apple represented that the Bait Apps were free. However, "until early 2011," Apple "did not tell parents . . . that their child was then able to purchase Game Currency for fifteen minutes without any supervision, oversight or permission." (¶¶ 4, 21, 22.) These omissions would clearly influence a reasonable person's decision to: (1) download the Bait App; and (2) allow their children to use the Bait App without supervision. Indeed, Apple's scheme depends entirely on misleading its customers.

For these reasons, the Complaint makes sufficient allegations regarding the representations and omissions to which Plaintiffs were exposed to satisfy the heightened pleading requirements of Rule 9(b).

---

[11] "A perfectly true statement worded in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [the UCL.]" *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998); *accord The People ex. rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 518 (2002); *In re Ferrero Litig.*, No. 11-cv-205 H (CAB), 2011 U.S. Dist. LEXIS 70629 (S.D. Cal. June 30, 2011).

### b. Plaintiffs Sufficiently Allege Reliance and Causation.

Contrary to Apple's unfounded argument (MTD at 14), Plaintiffs have alleged precisely which misrepresentations they were exposed to, their reliance on those misrepresentations, and the resulting harm.

### (1) Reliance

"A UCL violation for fraudulent business practices is distinct from common law fraud and does not require allegations of actual deception, reasonable reliance and damage." *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379, at *19 (N.D. Cal. Aug. 10, 2011) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006)). Rather, "a plaintiff must show that members of the public are likely to be deceived." *Id.* A Plaintiff does not "need to demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Rather, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* ("materiality is generally a question of fact" unless the "jury could not reasonably find that a reasonable man would have been influenced by" the misrepresentation) (quotation marks omitted) (citation omitted). "Accordingly, Plaintiffs must allege with specificity that Defendants' alleged misrepresentations: 1) were relied upon by the named plaintiffs; 2) were material; 3) influenced the named plaintiffs' decisions to purchase the [Bait Apps and Game Currency]; and 4) were likely to deceive members of the public. *Tietsworth v. Sears, Roebuck and Co.*, No. 5:09–CV–00288 JF (HRL), 2009 WL 3320486, at *8 (N.D. Cal. Oct 13, 2009) (Fogel, J.) (citing *Tobacco II Cases*, 46 Cal. 4th at 326-28).

The Complaint meets the pleading standard described in *Tietsworth*. It describes in detail the specific reliance on Defendant's misrepresentations and omissions, how they influenced them (or their minor children) to download the Bait Apps and buy Game Currency. For example,

> Ms. Scott downloaded onto her iPhone the "free" gaming App "Tap Zoo."
> Because it said it was "free," Ms. Scott entered her password in her iPhone, and
> handed the iPhone to her son. ***Within 60 seconds***, her account was charged
> $99.99 plus tax ($8.25) for such Game Currency as a "Trunk of Coins."

(¶ 9.)  Each Plaintiff has similarly relied on Apple's representations about free Apps, and Apple's omission that downloading free or nominal-cost Apps could result in large charges.  (¶¶ 8-12.)  Moreover, "materiality is generally a question of fact."  *Tobacco II Cases*, 46 Cal. 4th at 327.  In other words, a jury could find Apple's statements that the Bait Apps were "free" would have influenced a reasonable consumer in deciding whether to download and allow their children to use the Bait Apps.

There are also allegations throughout the Complaint regarding the likelihood that Apple's misrepresentations would deceive members of the public.  For example, "many games are targeted to young children and are free or cost a nominal charge to download.  These games, however, are often designed solely to lure children to purchase Game Currency."  (¶ 23; *see also* ¶¶ 24, 26, 28, 30 and 31.)  "Apple's practices have deceived and/or are likely to deceive Plaintiffs and members of the consuming public."  (¶ 76; *see also* ¶ 72.)

Because the Complaint meets the standard articulated in *Tietsworth*, Plaintiffs have satisfied the requirements of Rule 9(b) with respect to reliance.

### (2)  Causation

The CLRA offers relief to "'[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770.'" *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009) (citation omitted).  Similarly, "[c]ausation for UCL standing purposes is satisfied if 'a causal connection [exists] between the harm suffered and the unlawful business activity.'"  *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1014 (2010) (alteration in original) (citing *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007)).  *See also, Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2009 U.S. Dist. LEXIS 123329 (C.D. Cal. Dec. 21, 2009).  A "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327 (2011) (alteration in original) (thus a complaint can be deemed adequate "where from its allegations one could infer the plaintiff had relied on a defendant's representation").

Plaintiffs have pled that they lost money as a result of Apple's unfair business practices and have detailed exactly how much money each Plaintiff has lost. For example:

Without Ms. Silversmith's knowledge and permission, Ms. Silversmith's daughter purchased "Gems" while playing the "Fashion Story" App, and Ms. Silversmith's iTunes account was charged $99.99 for her six-year-old daughter's purchase.

(¶ 11.) Each Plaintiff has alleged causation in a similar way. (¶¶ 8-12.) Accordingly, Plaintiffs satisfy the pleading standard for causation under Rule 9(b).

### 4.    Plaintiffs Have Met the Procedural Requirements of the CLRA.

#### a.    Plaintiffs Filed the Affidavit Required Under Section 1780(d)

While Plaintiffs have filed the required affidavit under Section 1780(d), it is far from clear that such an affidavit is required for this action, as it was brought in Federal Court.  By its plain language, Cal. Civ. Code § 1780(d) applies to actions brought in particular California counties, i.e., in State court.[12]  It does not suggest that venue affidavits are required where a consumer brings a class action for a CLRA violation in *federal* court—in that case, venue is determined by the federal venue rules and statutes.  *See Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK (VBKx), 2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011).

Nevertheless, "[t]he purpose of the rule [is] satisfied" even if an affidavit was filed by a plaintiff who "is no longer one of the named plaintiffs" in the action. *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1178 (S.D. Cal. 2010).  Plaintiffs have satisfied this standard.  On April 11, 2011, when Plaintiffs first filed the original complaint, Plaintiff Meguerian filed an Affidavit satisfying the requirements of Section 1780(d).  *See* Declaration of Jon Shub ("Shub Dec.") Ex. 1, filed herewith.

#### b.    Plaintiffs Provided Timely Notice Under Section 1782(a)

A complaint seeking injunctive relief is not subject to the notice requirement of section 1782(a).  *Postier v. La.-Pac. Corp.*, No. C-09-3290 JCS, 2009 U.S. Dist. LEXIS 95060 (N.D. Cal. Oct. 13, 2009).  On April 11, 2011, Plaintiff Meguerian served a CLRA demand letter upon Apple.  Shub Dec. Ex. 2.  Also, contrary to Apple's assertion, on April 11, 2011, Plaintiff Meguerian filed his initial complaint against Defendant seeking solely equitable relief and indicating that if "Apple does not fully meet the demand set forth in [the demand] letter, then Plaintiff will amend or seek leave to

---

[12] CLRA Section 1780(d) provides in relevant part, "In any action subject to this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the ***action has been commenced in a county*** described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d) (emphasis added).

1 amend this complaint" in order to seek damages under the CLRA. *Id.* Plaintiffs waited more than 60

2 days after serving demand on Apple, during which time Apple made no effort to meet the demand set

3 forth in the letter. Finally, in accordance with § 1782(d), Plaintiffs filed the Complaint, which added a

4 CLRA claim for money damages. *See* Complaint, ECF No. 28. Accordingly, Plaintiffs have complied

5 with the notice requirement under section 1782(d).[13]

6 ### D. PLAINTIFFS HAVE PLED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

7

8        Apple's entire Bait App scheme is undertaken in bad faith. Recognizing that no reasonable

9 parent would willingly purchase Game Currency—let alone in amounts exceeding the cost of an

10 iPhone, iTouch, or iPad itself—Apple lures young children into incurring these charges instead.

11 Apple's strategy to sell virtual berries, coins, gems, etc., to children whose parents would never have

12 permitted such purchases **can only succeed by enticing young children to buy those virtual items**

13 **without first obtaining their parents' consent**.

14        Instead of fairly dealing with a customer who seeks to purchase actual content (e.g., music,

15 movies, books), Apple gives away colorful tempting Bait Apps to its customers in the hopes their

16 children will then spend inordinate amounts on Game Currency. (¶ 85.) Such conduct is the

17 quintessence of bad faith and unfair dealing. (¶ 87.)

18        "Every contract imposes upon each party a duty of good faith and fair dealing in its

19 performance and its enforcement," *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.

20 4th 342, 371 (1992) (quotation marks omitted) (citation omitted), and Apple has a duty to act in good

21 faith in performing under its T&Cs. "'The covenant is implied . . . to prevent a contracting party from

22 engaging in conduct which (while not technically transgressing the express covenant) frustrates the

23

---

24 [13] If the Court determines that Plaintiffs' notice was inadequate, courts in this District have refused to employ the "draconian" method of dismissing a CLRA claim with prejudice for failure to provide

25 notice of a damage request, and Plaintiffs may move to amend to add a claim for damages once they comply with § 1782(d). *See Keilholtz v. Super. Fireplace Co.*, No. C 08-00836 CW, 2009 WL

26 839076, at *3 (N.D. Cal. Mar. 30, 2009); *Galindo v. Financo Fin., Inc.*, No. C 07-3991 WHA, 2008 WL 4452344, at *5 (N.D. Cal. Oct. 3, 2008); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006

27 WL 3782902, at *5 (N.D. Cal. Dec. 21, 2006). *See also City of Oakland v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) ("Claims should be dismissed with prejudice only when it is clear that no

28 amendment could cure a defect in the complaint.").

other party's rights of the benefits of the contract.'" *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th Cir. 1999) (citation omitted). Objectively unreasonable conduct is sufficient to breach the implied covenant of good faith and fair dealing. *Carma Developers*, 2 Cal. 4th at 373.

Apple argues that its conduct was "expressly" authorized by the T&Cs, and therefore cannot form the basis for the claim for breach of the implied covenant of good faith and fair dealing. Specifically, Apple argues that Plaintiffs' allegations of bad faith cannot state a claim because "Apple required plaintiffs to maintain the security of their accounts by not revealing their passwords, and the contracts expressly provided that plaintiffs would be responsible for activity occurring on or through their accounts." MTD at 11.[14]

While the duty of good faith and fair dealing is "subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing," *Carma Developers*, 2 Cal. 4th at 374 (quotation marks omitted) (citation omitted), Apple cites no provisions in its T&Cs—because there are none—that expressly authorize Apple to (1) use Bait Apps to entice young children to purchase Game Currency without their parents' knowledge and permission; or (2) encourage the downloading of Bait Apps without warning parents that such Apps entice young children to purchase Game Currency at rates of up to $100 in a single click.

What is more, the terms of the T&Cs Apple relies on—relating to confidentiality of account information and responsibility for account activity—seek to impose obligations on accountholders, but they do not give Apple the right to engage in the acts challenged here. *Carma Developers*, 2 Cal. 4th at 374. Likewise, none of the cases Apple cites[15] in its brief support the proposition that terms as

---

[14] Preliminarily, Apple's argument fails at least with respect to Plaintiffs' allegations concerning the fifteen-minute window in which Apple did not require use of a password to make In-App Purchases. (¶ 21; *see also id.* ¶¶ 3-4, 22, 26.) During that window, children could purchase Game Currency without the use of a password.

[15] Two of the four cases Apple cites regarding breach of the implied covenant were decided after the motion dismiss stage of proceedings. *See Vectren Commc'ns Servs. v. City of Alameda*, No. C 08-3137 SI, 2009 U.S. Dist. LEXIS 72811, at *17 (N.D. Cal. Aug. 18, 2009) (S.D. Cal. Aug. 18, 2009); *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107 (2008). Apple cites *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988), for the proposition that the covenant does not "protect some general public policy interest." Plaintiffs are asserting claims based on specific bad faith conduct by Apple, not a "general public policy interest." Lastly, *Kinderstart.com LLC v. Google, Inc.*,

loosely connected to the challenged conduct as those relied upon by Apple can defeat a claim for breach of the covenant.

Unless a party's actions are *both* "expressly permitted" by the contract at issue and "within the parties' reasonable expectations," a party's conduct may be found to violate the covenant of good faith and fair dealing. *Carma Developers*, 2 Cal. 4th at 376. Even assuming that Apple could point to language in the T&Cs expressly permitting the bad faith conduct at issue, which it cannot, Apple does not contend that the challenged conduct was within the parties' reasonable expectations. Nor does Apple explain how its actions were in fact made in good faith. As recently explained in a decision from this District, Apple's arguments are misplaced:

> It is not enough to point to a provision in the contract permitting the allegedly nefarious conduct for if this was enough to avoid a breach of the implied covenant, the implied covenant would cease to have its own meaning as it would always require a breach of the underlying contract itself. The implied covenant is not concerned with the technical permissiveness of conduct pursuant to a contract, *it is concerned with assuring that all conduct related to receiving the benefits of the contract is done in good faith*. [Plaintiff] sufficiently alleges that [defendant]'s conduct was done in bad faith and thus [plaintiff]'s claims for breach of the implied covenant are sufficient.

*Indymac Fed. Bank v. PMI Mortg. Ins. Co.*, No. C 08-04303 WHA, 2009 U.S. Dist. LEXIS 14837, at *6 (N.D. Cal. Feb. 11, 2009) (emphasis added); *see also Fields v. QSP, Inc.*, No. CV 10–5772 CAS (SSx), 2011 WL 1375286, at *4 (C.D. Cal. Apr. 8, 2011) (denying motion to dismiss claim for breach of the implied covenant and holding that a plaintiff "'must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act . . . .'") (citation omitted); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, MDL No. 2032, 2009 U.S. Dist. LEXIS 108636, at *29-30 (N.D. Cal. Nov. 20, 2009) (in case under Delaware law, denying motion to dismiss claim for breach of the implied covenant where plaintiffs alleged defendant exercised contractual rights in bad faith); *In re Yahoo! Litig.*, 251 F.R.D. 459, 472 (C.D. Cal. 2008) (denying motion to dismiss claim for breach of

---

No. C 06-2057 JF (RS), 2006 U.S. Dist. LEXIS 82481, at *38-39 (N.D. Cal. July 13, 2006) (Foley, J.), did not remotely involve the type of unfair dealing at issue here.

the implied covenant of good faith and fair dealing in case alleging defendants did not act in good faith when they "charged plaintiffs for [] services that defendants knew were of little or no value").

Plaintiffs have stated a viable claim for breach of the implied covenant of good faith and fair dealing.

## E. PLAINTIFFS' COMPLAINT STATES A VALID CAUSE OF ACTION FOR UNJUST ENRICHMENT.

Apple argues that Plaintiffs' claim for unjust enrichment fails to state a claim for relief because "[n]o such independent claim exists in California." MTD at 16. Defendant is incorrect as a matter of law. State and federal courts throughout California, including this Court, have recognized a cause of action for unjust enrichment. *See, e.g., Blennis v. Hewlett-Packard Co.*, No. C 07-00333 JF, 2008 WL 818526, at *4 (N.D. Cal. Mar. 25, 2008) (Fogel, J.) ("Plaintiffs are entitled to plead an unjust enrichment claim in the alternative.") (Fogel, J.); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (Fogel, J.); *Fed. Deposit Ins. Co. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).[16]

To recover for unjust enrichment, a complaint must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Sanders*, 672 F. Supp. 2d at 989 (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)); *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996); *Hirsch v. Bank of Am., N.A.*, 107 Cal. App. 4th 708, 722 (2003). A claim for unjust enrichment is synonymous with restitution. *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992). Whether or not a plaintiff is entitled to recover on a theory of unjust enrichment requires a determination of policy considerations and the knowledge of the alleged wrongdoer. *Id.*

In addition, and contrary to Defendant's arguments, California courts also recognize a cause of action for money had and received. *See Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011) (holding that a cause of action for money had and received is available "in a great variety of situations," and "'lies wherever one person has received money which belongs to another, and which

---

[16] To be sure, there is a split between the federal courts regarding the viability of unjust enrichment counts as stand alone claims. *See Clerkin v. MyLife.com, Inc.*, No. C 11-00527 CW, 2011 WL 3607496, at *8 (N.D. Cal. Aug. 16, 2011) (discussing split and denying a motion to dismiss an unjust enrichment claim). This Court, however, recognizes that unjust enrichment claims may be viable under California law. *See, e.g., Sanders*, 672 F. Supp. 2d at 989.

1   in equity and good conscience should be paid over to the latter.'") (citation omitted); *3W s.a.m. tout*

2   *bois v. Rocklin Forest Prods., Inc.*, No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735, at *4 (E.D. Cal.

3   Feb. 7, 2011) (denying a motion to dismiss a claim for money had and received).

4        Plaintiffs allege that they and the Class have conferred benefits on Apple by paying for the

5   Game Currency their children purchased from Apple without their knowledge or permission.  (¶ 90.)

6   Apple knowingly and willingly accepted those monetary benefits from Plaintiffs and the Class, and

7   under the circumstances it would be inequitable for Apple to retain at their expense the enormous sums

8   it receives in selling Game Currency.  (¶¶ 81-93.)  Plaintiffs have stated a cause of action for unjust

9   enrichment.

10        Plaintiffs recognize that their unjust enrichment "claim will depend upon the viability of [their]

11  other claims." *Sanders*, 672 F. Supp. 2d at 989.  Even the cases cited by Defendant only dismissed the

12  claim for unjust enrichment after finding that the plaintiff failed to allege any other substantive claims

13  for relief. *See* cases cited at 16-17 of the MTD.

14        Because Plaintiffs have successfully pled claims for declaratory relief, breach of the duty of

15  good faith and fair dealing, unfair business practices, and violation of the CLRA, their unjust

16  enrichment claim survives as an alternative theory of recovery. *See Johnson v. Harley-Davidson*

17  *Motor Co. Group, LLC*, No. 2:10-cv-02443 JAM-EFB, 2011 WL 3163303, at *6-7 (E.D. Cal. Jul. 22,

18  2011).

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the motion to dismiss be denied.

Dated:  September 2, 2011                   Respectfully submitted,

                                            **BERMAN DeVALERIO**

                                            BY:    /s/ Christopher T. Heffelfinger
                                                   Christopher T. Heffelfinger

                                            Joseph J. Tabacco, Jr.
                                            Anthony D. Phillips
                                            One California Street, Suite 900
                                            San Francisco, CA 94111
                                            Telephone: (415) 433-3200
                                            Facsimile: (415) 433-6382
                                            Email: jtabacco@bermandevalerio.com
                                                   cheffelfinger@bermandevalerio.com
                                                   aphillips@bermandevalerio.com

                                            *Proposed Interim Liaison Counsel for Plaintiffs*

                                            **BONI & ZACK LLC**

                                            BY:    /s/ Michael J. Boni
                                                   Michael J. Boni

                                            Joshua D. Snyder
                                            15 St. Asaphs Road
                                            Bala Cynwyd, PA 19004
                                            Telephone: (610) 822-0200
                                            Facsimile: (610) 822-0206
                                            Email: MBoni@bonizack.com
                                                   JSnyder@bonizack.com

                                            *Proposed Interim Co-Lead Counsel for Plaintiffs*

                                            Simon Bahne Paris
                                            Patrick Howard
                                            **SALTZ, MONGELUZZI, BARRETT &
                                            BENDESKY, P.C.**
                                            One Liberty Place, 52nd Floor
                                            1650 Market Street
                                            Philadelphia, PA 19103
                                            Telephone: (215) 575-3986
                                            Facsimile: (215) 496-0999
                                            Email: sparis@smbb.com
                                                   phoward@smbb.com

                                            *Proposed Interim Co-Lead Counsel for Plaintiffs*

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: jshub@seegerweiss.com

Benjamin G. Edelman
**LAW OFFICES OF BENJAMIN EDELMAN**
27A Linnaean Street
Cambridge, MA 02138
Telephone: (617) 359-3360
Email: edelman@pobox.com

Roberta D. Liebenberg
Jeffrey S. Istvan
Gerard A. Dever
**FINE, KAPLAN AND BLACK, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872
Email: rliebenberg@finekaplan.com
            jistvan@finekaplan.com
            gdever@finekaplan.com

Shanon J. Carson
Sarah R. Schalman-Bergen
**BERGER & MONTAGUE, P.C.**
1622 Locust St.
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: scarson@bm.net
            sschalman-bergen@bm.net

*Attorneys for Plaintiffs*

## E-FILING ATTESTATION

I, Christopher T. Heffelfinger, am the ECF User whose ID and password are being used to file this document. In compliance with General Order 45 X.B., I hereby attest that Michael J. Boni has concurred in this filing.

/s/ Christopher T. Heffelfinger
Christopher T. Heffelfinger