Simon Bahne Paris (admitted *pro hac vice*)
Patrick Howard (admitted *pro hac vice*)
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Telephone:  (215) 575-3986
Facsimile:  (215) 496-0999
Email:   sparis@smbb.com
           phoward@smbb.com

Michael J. Boni (admitted 9/11/1992)
Joshua D. Snyder (admitted *pro hac vice*)
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206
Email:   mboni@bonizack.com
           jsnyder@bonizack.com

*Co-Lead Counsel for Settlement Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE IN-APP PURCHASE LITIGATION | Master File No. 11-CV-1758-EJD |
| | **CLASS ACTION** |
| This Document Relates to: | **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| All Actions | |
| | Date:  October 18, 2013 |
| | Time: 9:00 a.m. |
| | Judge: Hon. Edward J. Davila |
| | Location:   San Jose Courthouse |
| | Courtroom 4 -5th Floor |
| | 280 South 1st Street |
| | San Jose, CA 95113 |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I. INTRODUCTION ...................................................................................................... 1

II. CLASS NOTICE COMPLIED WITH THE COURT'S ORDER, RULES 23(C) AND (E), AND DUE PROCESS ............................................................................... 3

    A. Direct Notice ................................................................................................. 3

    B. The Settlement Website ................................................................................. 4

III. FOR PURPOSES OF SETTLEMENT, THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 ...................................................................... 5

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............................ 6

    A. The Settlement Makes Participating Class Members Whole................................. 8

        1. Aggregate Relief ................................................................................. 9

        2. $5 Credit Relief .................................................................................. 10

        3. Non-Monetary Relief ......................................................................... 10

        4. Payment of Notice Costs, Costs of Administration, Attorneys' Fees, Costs and Service Awards....................................................................... 11

    B. The Risks to Maintaining Class Certification Status Throughout the Trial Warrants Approval .......................................................................................... 11

    C. The Risk, Expense and Duration of the Litigation and Trial Highlights the Reasonableness of the Settlement and Warrants Approval................................... 12

    D. The Parties Bargained in Good Faith, and There was No Collusion ................... 13

    E. Class Member Reaction has been Overwhelmingly Positive ............................... 16

    F. The Scope of the Settlement Release of Claims is Reasonable and Bounded by the Claims Asserted in the Litigation............................................................... 20

V. CONCLUSION ......................................................................................................... 21

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>PAGE(S)</u>

3

### CASES

4
*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................... 8

5
*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ................................................................................. 14
6

7
*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................... 7

8
*Create-A-Card, Inc. v. INTUIT, Inc.*,
    No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22,
9
    2009) ..................................................................................................................... 7, 13

10
*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ........................ 8
11

12
*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ................................................................................. 14

13
*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) ..................................................................... 17, 18, 19
14

15
*Gould v. Alleco, Inc.*,
    883 F.2d 281 (4th Cir. 1989) ................................................................................... 18

16
*Hawkins v. Comm'r of the N.H. HHS*,
    No. 99-143-JD , 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004) ................... 14
17

18
*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................ 14

19
*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................... 14, 15, 16
20

21
*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................................... 17

22
*In re Zoran Corp. Derivative Litig.*,
    No. C 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246 (N.D. Cal. Apr. 7, 2008) ................. 20
23

24
*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) ................................................................................... 14

25
*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ..................................................................................... 7
26

27
*Moore v. Verizon Commc'ns, Inc.*,
    No: C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28,
28
    2013) (Armstrong, J.) ....................................................................................... 18, 20

[NO. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

ii

*Nat'l Rural Telecomms., Coop. v. DirectTV, Inc.,*
    221 F.R.D. 523 (C.D. 2004)....................................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)................................................................................... 7, 8

*Utility Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989)....................................................................................... 7

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976)....................................................................................... 7

## STATUTES & RULES

Fed. R. Civ. P. 23(a)............................................................................................... 5, 6

Fed. R. Civ. P. 23(b)(3).......................................................................................... 5, 6

Fed. R. Civ. P. 23(e)................................................................................................... 1

Fed. R. Civ. P. 23(e)(5)............................................................................................. 18

## OTHER AUTHORITIES

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th ed.
    2002) ......................................................................................................................... 14

**ISSUE TO BE DECIDED**

**(Local Rule 7-4(a)(3))**

1.   Whether the Court should grant final approval to the settlement set forth in the

Stipulation of Settlement and preliminarily approved on May 2, 2013 (ECF No. 104).

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 18, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, United States District Court Judge, Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California 95113, Courtroom 4, 5th Floor, Plaintiffs Garen Meguerian, Lauren Scott, Kathleen Koffman, Heather Silversmith and Twilah Monroe ("Plaintiffs") will and hereby do move pursuant to Rule 23 of the Federal Rules for Civil Procedure for an order granting final approval to the proposed Settlement.

This motion is made on grounds that the parties have reached a fair and reasonable settlement disposing of all claims in this action and that they reached that settlement after extensive negotiations, conducted at arm's-length by experienced counsel with the assistance of respected mediators, the Honorable Daniel Weinstein (Ret.) and Catherine Yanni of JAMS.  This motion is filed pursuant to the Court's May 2, 2013 Order Granting the Motion for Preliminary Approval of Class Action Settlement (ECF No. 104) and is based upon this Notice, the below memorandum of points and authorities, the Stipulation of Settlement, the declarations submitted, all other pleadings and matters of record, and such oral and documentary evidence as may be presented at the hearing of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(e), Class Counsel respectfully submit this Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Motion for Final Approval").  The terms of the Settlement are set forth in the Stipulation of Settlement, as amended on March 8, 2013, which was preliminarily approved by the Court on May 2, 2013 (the "Agreement"), ECF No. 101-1.[1]  As the Court aptly stated when granting preliminary approval,

---

[1] Unless otherwise specified, all capitalized terms herein that are defined terms in the Agreement shall have the same meaning as in the Agreement.

1   the relief provided under the Agreement "is adequate, if not exceptional." *See* Order Granting

2   Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"),

3   ECF No. 104 at 7:3.

4       This Settlement affords every Class Member the opportunity for a full refund of In-App

5   Purchases made by minors without the Class Member's knowledge and permission prior to

6   May 2, 2013.  There is little, if any, additional benefit that could be accomplished for the Class

7   through victory at trial.  Under the proposed Settlement, every Settlement Class Member is

8   eligible to receive iTunes store credit or a cash refund in an amount equal to the aggregate total of

9   all Qualified Game Currency Charges.  Alternatively, the Settlement Class Member may elect a

10  $5.00 iTunes store credit, or cash payment for those members who no longer maintain an iTunes

11  account, upon submittal of a simple claim form.  Beyond this extraordinary monetary relief

12  provided to Settlement Class Members, the notice program informed parents of the existence of

13  parental controls available on their Apple device.  Parents were made aware of the parental

14  controls on the settlement website, stating: "Apple's parental controls may be set to disable In-

15  App Purchases on an iOS device or to require a password before every In-App Purchase

16  transaction."  Immediately following this statement, the settlement website provides a link to

17  detailed instructions on how to implement these parental controls.[2]

18      The proposed Settlement is fair, reasonable, and adequate.  It has been reached through

19  arm's-length negotiations overseen by two highly-regarded mediators, the Hon. Daniel Weinstein

20  (Ret.) and Catherine Yanni, Esq. of JAMS.  In the end, the guiding question is what recovery was

21  sought by the litigation, and what is provided through the Settlement.  This class action sought

22  refunds for In-App Purchases made without a parent's knowledge or permission, and that is

23  precisely what the Settlement delivers – an exceptional result for the Class. For this reason and

24  those set forth below, the Court should grant Plaintiffs' Motion for Final Approval.

25

26

27      [2] *See* https://www.itunesinapppurchasesettlement.com/CAClaimForms/AIL/faqs.aspx#q23
    (Frequently Asked Question No. 23).

28

1

## II. CLASS NOTICE COMPLIED WITH THE COURT'S ORDER, RULES 23(C) AND (E), AND DUE PROCESS

2       The notice program complied with the terms set forth in the Agreement and the Court's

3   Preliminary Approval Order.  That program had two primary components: (i) direct e-mail or

4   postal mail dissemination of the Summary Notice of Settlement ("Summary Notice"); and (ii) a

5   settlement website (where claims can be filed). As demonstrated below, notice has reached

6   virtually all potential Class Members.

7       ### A.     Direct Notice

8       From June 19, 2013 through July 8, 2013, the Claims Administrator, Kurtzman Carson

9   Consultants LLC ("KCC"), e-mailed the Summary Notice to 28,093,249 potential Class Members

10  who are (or were) iTunes Account Holders that paid for one or more purchase(s) of Game

11  Currency prior to May 2, 2013, the date of the Preliminary Approval Order.  *See* Declaration of

12  Jeffrey Gyomber re: Notice Procedures ("KCC Decl.") ¶¶ 4-6, 9, which is attached as Exhibit 1 to

13  the Declaration of Anthony D. Phillips in Support of Plaintiffs' Motion for Final Approval of

14  Class Action Settlement, filed herewith; Agreement, § VII.B.  Each of these e-mailed Notices has

15  a personalized claim number that is provided to facilitate the filing of a claim (but is not required

16  to file a claim).  Within the Summary Notice provided by e-mail to each potential Class Member,

17  there was a direct link to the Settlement Website discussed below.  Where an e-mail address was

18  unknown, or the e-mail was returned as undeliverable, the Claims Administrator mailed a copy of

19  the Long Form Notice to the potential Class Member.  KCC Decl. ¶¶ 3, 10-11 & Exs. A, B, D &

20  E thereto; Agreement, § VII.C.  By July 16, 2013, KCC had mailed 1,736,373 Long Form

21  Notices to potential Class Members.  *See* KCC Decl. ¶¶ 10, 11.

22      The potential Class Members and associated e-mail addresses utilized for direct notice

23  were generated from Apple's customer database.  Each iTunes Account Holder provides an e-

24  mail address when establishing the account for receipt of notices and purchase receipts.  Potential

25  Class Members are (or were) all iTunes Account Holders.  As such, Apple retains the email

26  addresses and purchase history of In-App Purchases and was able to identify purchases of Game

27  Currency prior to May 2, 2013 for each iTunes Account Holder.  The Summary Notice was sent

28  to the e-mail address provided by each potential Class Member.  KCC Decl. ¶¶ 4-6, 9-11.  In

total, KCC sent 28,093,249 Summary Notices by e-mail with 1,753,695 of these e-mails being returned as undeliverable. *Id.* ¶ 9.  There were 1,736,373 potential Class Members whose e-mailed Summary Notice was returned as undeliverable that had a mailing address. *Id.* ¶ 10.  On or before July 16, 2013, KCC mailed each of these potential Class Members a Long Form Notice by First Class postage. *Id.* ¶11.

## B.     The Settlement Website

The settlement website, www.itunesinapppurchasesettlement.com, was launched on June 19, 2013.  *See* KCC Decl. ¶ 8.  This website includes the following information and features:

(i)     a description of the Settlement;

(ii)    a list of important dates and deadlines, including the date set for the Final Approval Hearing and deadlines for Class Members to object, opt-out, and file claims;

(iii)   important court documents including Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 93); Supplemental Declaration of Anthony D. Phillips in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 101); Preliminary Approval Order (ECF No. 104); Stipulation and Order Adjusting Deadlines (ECF No. 108); and Plaintiffs' Notice of Motion and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Service Awards, Memorandum of Points and Authorities in Support Thereof ("Motion for Attorneys' Fees") (ECF No. 115);

(iv)    the Agreement (ECF No. 101-1);

(v)     the Long Form Notice (in English and Spanish);

(vi)    directions for potential Class Members to access their iTunes purchase history;

(vii)   an online claims filing feature which allows Class Members to file a claim online with or without having received a Summary Notice with an assigned claim number;

(viii)  a toll-free telephone number to seek more information by telephone;

(ix)     answers to frequently-asked questions relating to the Settlement, the rights of Class Members, the identification of eligible apps, the filing of a claim, and identification of a Class Member's Apple ID; and

(x)     identification of, and instructions for the utilization of, the available Parental Controls to disable In-App Purchases on an iOS device or to require a password before every In-App Purchase transaction.

The interactive claim filing feature of the settlement website became available to Class Members on June 19, 2013.  KCC Decl. ¶ 8.  This website provides a searchable electronic database of Qualified Apps to identify purchases for which a claim is viable.  Class Members can choose among multiple options to file a claim:

(i)     Class Members to whom the Summary Notice was e-mailed with an assigned claim number may enter that assigned number to facilitate the filing of a claim;

(ii)    Class Members without a claim number can still file a claim electronically through this interactive website; and

(iii)   Class Members may also complete the Claim Form interactively, and download to print for mailing.

The Settlement Website has seen robust activity, including over 1,180,586 visitors to the site.  *See* KCC Decl. ¶ 14.  In addition, the toll-free telephone number has received over 6,802 telephone calls. *See id.* ¶¶ 7, 13.  Class Members who did not wish to access the Settlement Website could use the toll-free telephone number to request that a hard copy of the Claim Form be sent through the mail.  *See id.*

**III.   FOR PURPOSES OF SETTLEMENT, THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23**

On May 2, 2013, as part of its Preliminary Approval Order, the Court conditionally certified the following Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes only ("Settlement Class" or "Class"):

All United States residents who, prior to the date of the Conditional Approval Order, paid for Game Currency charged to their iTunes account by a minor without their knowledge or permission.  The Settlement Class excludes Apple, any

entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; and all persons who validly request exclusion from the Settlement Class.

ECF Nos. 104 at 8, 94 at 4. It is important to note that not all of the approximately 28.1 million individuals who received notice are actually Class Members. As described in this Motion for Final Approval, notice was provided to *all* iTunes Account Holders who purchased Game Currency prior to the date of the Preliminary Approval Order. Those among the recipients of the notice who experienced a purchase of Game Currency by a minor without their knowledge or permission would then self-identify as Class Members. The iTunes Account Holders who did not have such an experience are not part of the Settlement Class; therefore, they are not subject to any Judgment provided for under the section IX of the Agreement.

On May 2, 2013, the Court also appointed Plaintiffs Meguerian, Scott, Koffman, Silversmith and Monroe as representatives of the Settlement Class, and appointed Simon B. Paris and Patrick Howard of Saltz, Mongeluzzi, Barrett & Bendesky, P.C. and Michael J. Boni and Joshua D. Snyder of Boni & Zack LLC as Co-Lead Counsel to represent the interests of the Settlement Class. *Id.*

Upon provisionally certifying the Settlement Class, appointing the Class Representatives and appointing Co-Lead Counsel to represent the Settlement Class Members, the Court already made substantial findings under Rule 23. *See* ECF No. 104 at 3-6. There has been no intervening event or change in circumstances since May to warrant reconsideration or modification of that conditional certification. Thus, as set forth in Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 93) and the Court's Preliminary Approval Order (ECF No. 104), which are both incorporated herein by this reference, the Settlement Class continues to satisfy the class certification requirements set forth in Rule 23(a) and Rule 23(b)(3). This provisional certification order, as set forth in the Court's Preliminary Approval Order, should now be final as it pertains to the Settlement Class.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d

615, 625 (9th Cir. 1982).  It is also beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is particularly true here given the difficulties of common proofs, the inequities in resources between Apple and its iTunes Account Holders, the uncertainties of the outcome, and the likely length of this litigation affecting as many as approximately 28 million potential Class Members.

Approval of a class action settlement is a matter within the sound discretion of the court. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Create-A-Card, Inc. v. INTUIT, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *7 (N.D. Cal. Sept. 22, 2009) (Alsup, J.).  The "court's inquiry is whether the settlement is 'fair, adequate, and reasonable.'" 2009 U.S. Dist. LEXIS 93989, at *7 (quoting *City of Seattle*, 955 F.2d at 1276).  "A settlement is fair, adequate, and reasonable when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *Id.* (citation omitted).

The Ninth Circuit has set forth factors which may be considered and balanced in evaluating the fairness of a class action settlement:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). The importance of any one of these factors "will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

In exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

7

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original).  Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness," especially where the recommendations follow lengthy arm's-length and intensely fought negotiations overseen by a neutral party such as Judge Weinstein and Ms.Yanni of JAMS, as was the case here.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

Evaluation of the foregoing factors supports final approval of the proposed Settlement.

### A.      The Settlement Makes Participating Class Members Whole

The Settlement accomplishes the goals of the litigation, to provide refunds to Class Members for In-App Purchases within Game Apps targeted at children that were made unbeknownst to the iTunes Account Holder.  It provides full refunds for Game Currency purchases made within a single forty-five (45) day period without the knowledge or permission of the account holders. *See* Agreement, § V.A.2.  In addition, Settlement Class Members may request refunds for Qualified Game Currency Charges that occurred after the forty-five (45) day period if they furnish an explanation of the circumstances including, specifically, the circumstances that made it possible for the minor to continue to charge Game Currency after the account holder was presumably provided with Apple email receipts and monthly credit card statement(s). *See id*. § V.B.2.c.  Alternatively, a Class Member may forgo this full refund for a $5

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

8

1   iTunes Store Credit regardless of whether their purchases subject to the Settlement were more or

2   less than $5.  Finally, a non-monetary, yet important component of the Settlement, provides all

3   potential Class Members with information and instruction on parental controls available on their

4   iOS Device to prevent In-App Purchases or use of the 15-minute window for In-App Purchases.

5   *Id.* § X.B. Through this Settlement, if approved, a Class Member can be made whole for any loss

6   caused by the conduct that is the subject of this litigation, and has been provided the tools

7   necessary to prevent any possible recurrence of that loss.

8                    **1.      Aggregate Relief**

9           Settlement Class Members are entitled to receive an iTunes Store Credit (or, for any

10  Settlement Class Member who no longer maintains an iTunes account, a cash refund), in an

11  amount equal to the aggregate total of all Qualified Game Currency Charges within a single forty-

12  five (45) day period for which they have not previously received a refund ("Aggregate Relief").

13  *See* Agreement, § V.A.2.  At their election, Settlement Class Members who currently maintain an

14  iTunes account and who are claiming Aggregate Relief totaling $30 or more may choose to

15  receive a cash refund in lieu of an iTunes Store Credit.  *Id.*

16          Settlement Class members seeking Aggregate Relief are required to submit a properly

17  executed online Claim Form that sets forth, among other things, the Settlement Class Member's

18  name, address, and Apple ID.  *See id.* § V.A.2.  Much of this information is pre-populated through

19  the use of a personalized claim number that corresponds to the direct e-mail Notice.  Settlement

20  Class Members shall also be required to identify the Qualified App, date of purchase, and

21  purchase price for each Qualified Game Currency Charge for which credit is sought, and attest

22  that they:  (a) paid for each claimed Qualified Game Currency Charge; (b) did not knowingly

23  enter their iTunes password to authorize any such purchase and did not give their password to the

24  minor to make such purchase; and (c) have not already received a refund from Apple for the

25  claimed Qualified Game Currency Charges.  *See id.* § V.B.2.  Settlement Class Members may

26  obtain complete records of their In-App Purchases in iTunes by:  (1) selecting "View My Apple

27  ID" from the iTunes "Store" menu, (2) entering their Apple IDs and associated passwords, and

28

(3) clicking "See All" under the heading titled "Purchase History."  *See id*. § V.B.2.d.  The interactive settlement website guides the Class Member through each of these steps.

In addition, the Settlement Class members may request refunds for Qualified Game Currency Charges that occurred after the forty-five (45) day period in a claim for Aggregate Relief, as explained in Section IV.A., above.  *See* Agreement, § V.B.2.c.

In short, every Settlement Class Member has the opportunity to be made whole now through this Settlement.[3]

## 2.    $5 Credit Relief

In the alternative to the Aggregate Relief, Settlement Class Members may elect to receive an iTunes Store Credit in the amount of five dollars ("$5 Credit Relief"). *See* Agreement, § V.A.1.  Where a Settlement Class Member no longer maintains an active iTunes account, Apple will pay $5 in cash.  Settlement Class Members seeking this $5 Credit Relief must file a valid electronic Claim Form, setting forth the Settlement Class Member's name, address, and Apple ID. Settlement Class Members must attest that they:  (a) paid for Qualified Game Currency Charges that a minor charged to their iTunes account without their knowledge or permission; (b) did not knowingly enter their iTunes password to authorize any such purchases and did not give their password to the minor to make such purchases; and (c) have not already received a refund from Apple for those Qualified Game Currency Charges.  *See id*. § V.B.1.  The $5 Credit Relief is fixed at $5 regardless of actual Qualified Game Currency Charges, whether more or less than $5, to provide a simplified claims process for Settlement Class Members that suffered lower levels of losses.

## 3.    Non-Monetary Relief

Among the most important features of this Settlement is information provided to Apple's consumers.  As part of the Settlement, the Notice provides instructions concerning the use of Apple's parental controls, which may be set to disable In-App Purchases on an iOS device or to

---

[3]     To be valid, Claim Forms must be submitted within one hundred and eighty (180) days from the Notice Date, or submitted online (or postmarked) by January 13, 2014 ("Claims Period").  Agreement, § V. C (describing "Claims Period").

1   require a password before every In-App Purchase transaction.  This additional relief was provided

2   to over 28 million iTunes Account Holders, and will facilitate the prevention of future

3   unauthorized In-App Purchases by minors in the future.  *See* Agreement, § X.B.

**4.      Payment of Notice Costs, Costs of Administration, Attorneys' Fees, Costs and Service Awards**

6       Apple will pay all of the costs of notice and all costs associated with administering the

7   settlement.  *See* Agreement, §§ V.D., VII.D.  Apple also agrees to pay, subject to this Court's

8   approval, an award to Class Counsel of attorneys' fees and costs in the amount of $1.3 million.

9   Apple also will pay a service award to each named Plaintiff in the amount of $1,500.  *See id.*  The

10  attorneys' fees and costs, service awards, and notice and claims administration costs are all

11  separate from and do not in any way diminish the Settlement Class's recovery.  *See id.* § VIII.A.

12  Plaintiffs' Motion for Attorneys' Fees (ECF Nos. 115, 116) is scheduled to be heard concurrently

13  with this Motion for Final Approval.

**B.      The Risks to Maintaining Class Certification Status Throughout the Trial Warrants Approval**

16      While Class Counsel firmly believe a litigation class would have ultimately been certified,

17  Plaintiffs fully expected Apple to mount significant opposition to class certification.

18      In particular, Apple was likely to contend that individual issues surrounding the In-App

19  Purchases of Game Currency would predominate over the common issues so as to defeat

20  certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure namely, that

21  determining whether an In-App Purchase was made by a minor or a parent, and whether the

22  minor's purchase was made with the knowledge and permission of the account holder, would

23  require individualized factual determinations.  In addition, Plaintiffs expected that Apple would

24  argue that its iTunes Terms and Conditions require (1) account holders to be solely responsible

25  for maintaining the confidentiality and secrecy of their respective accounts and passwords and

26  (2) include a disclaimer that Apple is not responsible for any losses arising out of the

27  "unauthorized" use on an account – an argument, which, if accepted, may also have raised

28  individualized considerations.  While, in Class Counsel's opinion, these contentions could have

1    been overcome using classwide proof from Apple's internal recordkeeping and transaction data,

2    Apple's arguments nonetheless posed a risk that certification would not have been maintained

3    through trial.

4          The Settlement, however, eliminates these risks to Class Members.  Through the submittal

5    of the Claim Form, each Settlement Class Member is able to identify losses in connection with

6    purchases made by a minor without their knowledge and permission, and to obtain a full refund.

7    In addition, through the Notice, Settlement Class Members are made aware of protections to

8    prevent future unauthorized In-App Purchases stemming from the conduct at issue here.  Apple

9    will provide refunds for those Qualified Game Currency Charges to those Settlement Class

10   Members who submit timely Claim Forms regardless of the iTunes Terms and Conditions.

11         **C.     The Risk, Expense and Duration of the Litigation and Trial Highlights the**
           **Reasonableness of the Settlement and Warrants Approval**
12

13         Beyond the potentially compelling challenges to class certification, Apple sought to limit

14   its liability based on the premise that it only operates the electronic storefront through which In-

15   App Purchases are made.  According to Apple, parents' complaints concerning In-App Purchases

16   arise from programming decisions made by third-party app developers and, in this regard, Apple

17   plays no direct role in creating the content or features of the In-App Purchase at issue in this

18   litigation.  While Class Counsel contend that the crux of this case concerns activity at the point of

19   sale, which is controlled by Apple, the resolution of this dispute had the potential to dramatically

20   increase the complexities of this case on the merits (and for class certification).

21         Similarly, the Qualified Apps have varying content and disclosures regarding the

22   availability of In-App Purchases.  Thus, Apple contends these disclosures adequately notified

23   iTunes Account Holders of In-App Purchases, and that they were available within the app

24   regardless of its free or nominal cost.   These disclosures, especially as they relate to In-App

25   Purchases outside the 15-minute window, presented challenges to the sustainability of the fraud

26   based claims, according to Apple.  Plaintiffs expected that they could overcome these challenges,

27   but these challenges did present risks on the merits, as well as the risk that recovery would be

28   limited before the termination of the Class Period.

Finally, all of these issues adhere in the agreement between Apple and the iTunes Account Holder set forth in the iTunes Terms and Conditions.  Apple vigorously argues that it is not liable for any "unauthorized" purchase on an iTunes Account Holder's account.  The Terms and Conditions disclaim liability for any losses arising out of the unauthorized purchases on the account, which is based primarily on the premise that each iTunes Account Holder is solely responsible for the security of his or her account and secrecy of his or her password.  While Class Counsel presented substantial arguments surrounding the presentation and sales of Game Currency that would likely have overcome this challenge, the risk affected the Parties' positions in the settlement negotiations.  *See generally* Defendant Apple Inc.'s Motion To Dismiss Plaintiffs' Consolidated Class Action Complaint ("Motion to Dismiss"), ECF No. 37.

Thus, in sum, while Plaintiffs view their claims as strong, and although their claims survived Apple's Motion to Dismiss (with the exception of the breach of the implied covenant claim, which was dismissed with leave to re-plead, *see* ECF No. 66), Apple maintained fact-based defenses as to its liability or designed to shift liability to other parties.  These defenses would have complicated the litigation and reduced the likelihood of recovery for the Settlement Class. These risks are alleviated through this Settlement, if approved by the Court.

### D.   The Parties Bargained in Good Faith, and There was No Collusion

Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight, although, of course, a district court should not simply rubber stamp stipulated settlements.  *INTUIT*, 2009 U.S. Dist. LEXIS 93989, at *12-13; *Nat'l Rural Telecomms., Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 528 (C.D. 2004) (according "great weight" to the recommendation of counsel). In recommending the Settlement, Class Counsel exercised their judgment based on extensive knowledge of the facts of the case, the legal issues involving the Class, and their evaluation of the strengths and weaknesses of the case. When comparing the litigation and class certification risks to the exceptional relief being provided to Settlement Class Members through the Settlement, Class Counsel readily concluded that the terms of the Agreement are fair, reasonable, and adequate.

The Court must also be satisfied that "the settlement is not the product of collusion among the negotiating parties" when, as here, "a settlement agreement is negotiated prior to formal class certification." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (citation, emphasis, and alteration omitted); *see also Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *3-5 (N.D. Cal. Feb. 19, 2013) (Breyer, J.) (granting final approval of class action settlement and fee request). Factors considered here include whether the settlement resulted from arm's-length negotiations between experienced, capable counsel;[4] the end result achieved;[5] and whether counsel are to receive a disproportionate distribution of the settlement under a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds where funds not awarded revert to defendants rather than to the class. *In re Bluetooth*, 654 F.3d at 947; *see generally Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *7-8 (N.D. Cal. Apr. 26, 2013) (Cousins, Mag. J.) (granting final approval of class action settlement and fee request). Applying these factors favors approval here.

The Settlement is the result of serious, informed, non-collusive negotiations conducted in good faith. *See* Agreement at 3. The parties actively engaged in many rounds of arm's-length negotiations for over four and a half months, including two full-day, in-person mediation sessions and numerous phone calls and conferences. These efforts were conducted under the supervision and assistance of two private mediators from JAMS. Co-Lead Counsel and counsel for Apple are

---

[4] *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (a presumption of correctness attached to a class settlement reached in arm's-length negotiations between experienced, capable counsel); *see also Hawkins v. Comm'r of the N.H. HHS*, No. 99-143-JD , 2004 U.S. Dist. LEXIS 807, at *15 (D.N.H. Jan. 23, 2004); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement.") (footnote omitted); *see also* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41, at 87-89 (4th ed. 2002).

[5] *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co*., 834 F.2d 677, 684 (7th Cir. 1987) ("[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation, . . . The proof of the pudding was indeed in the eating."); *see also In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiffs' case if it were fully litigated), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

14

1    experienced class action litigators who recognize this compromise as being in the best interests of

2    their respective clients.

3           Secondly, the parties worked long and hard to reach a resolution of this matter.  The end

4    result speaks for itself – a Settlement that provides a full refund of Qualified Game Currency

5    Charges available to every member of the Settlement Class.  In the end, there was little more to

6    be gained through further litigation.  As this Court kindly noted when granting preliminary

7    approval, and Class Counsel agree, the relief is "adequate, if not exceptional."  ECF No. 104 at

8    7:3.

9           Turning to the third *Bluetooth* factor, Apple has agreed to separately pay any award of

10   attorneys' fees and expenses up to $1.3 million, and service awards to Class Representatives of

11   $1,500 each, not to exceed $7,500.[6]  This payment by Apple reflects none of the concerns

12   expressed by the Ninth Circuit in *Bluetooth*.  *See In re Bluetooth*, 654 F.3d at 947.  There are

13   structural protections associated with the Agreement in this case. First, attorneys' fees and

14   expenses were not negotiated until after the parties had agreed on all principal terms of the

15   Settlement.  *See* Declaration of Simon Bahne Paris in Support of Application for Attorneys' Fees

16   and Reimbursement of Expenses (ECF No. 116-4), ¶10.  These fees and expenses did not

17   influence the course of negotiations regarding the Settlement benefits to the Class since the

18   refund relief was agreed upon prior to commencement of any such negotiations. Second, the

19   attorneys' fees that Class Counsel will ask the Court to approve reflect reasonable compensation

20   for the exceptional relief obtained, and the hours expended to obtain it, which exclude

21   compensable time related to the preparation of the Motion for Attorneys' Fees (ECF No. 115) and

22   this Motion for Final Approval.  Furthermore, while the claims period is open until January 13,

23   2014, to date there have 33,521 claims filed.  *See* KCC Decl. ¶ 17.  In addition, this litigation

24   brought about the significant non-monetary benefits discussed above.  Thus, while the fee is

25   certainly warranted by the results achieved, an award of less than $1.3 million would serve only

26   _____

27       [6] These payments should be granted for the reasons set forth herein, and in Plaintiffs'
     Motion for Attorneys' Fees.  ECF Nos. 115-116.

28

1    to chill the fee-shifting goals of the California statutes Class Counsel employed to deliver full

2    relief to so many.  In the end, there is simply no credible argument that the concerns expressed in

3    *Bluetooth*, that Class Counsel "bargained away something of value to the class" in exchange for

4    the $1.3 million payment for fees and expenses, exists here.  *See In re Bluetooth*, 654 F.3d at 948.

5                     **E.      Class Member Reaction has been Overwhelmingly Positive**

6          There were 28 million direct e-mail Summary Notices sent to potential Class Members.

7    All objections to, and requests to be excluded from, the Settlement were due by August 30, 2013.

8    *See* ECF No. 108 at 2:5-6.  In total, there are only 339 requests for exclusion and six objections

9    from this universe of 28 million who were provided with direct notice.  *See* KCC Decl. ¶¶15-16,

10   and Exs. F & G thereto.  The extremely limited number of both weighs heavily in favor of

11   granting final approval.  *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL

12   1120801, at *8 (N.D. Cal. Mar. 18, 2013) (Davila, J.) (collecting cases).

13         As it pertains to the six objectors, Class Counsel responds to each as follows:

14                     **1.      Murrey Objection (ECF No. 119) (*see* KCC Decl. Ex G).**  After filing a

15   claim for the relief provided under the Settlement, the Murrey Objection raises the following

16   issues: (i) the $1.3 million fees and expense award is excessive; (ii) insufficient detail about the

17   fee request was provided in advance of the deadline for objections; (iii) the Settlement Class has

18   not met its burden that the Settlement is fair, reasonable and adequate; (iv) the release is overly

19   broad; and (v) the Settlement Class does not satisfy Rule 23.  The Murrey Objection fails as no

20   factual or legal basis is provided to substantiate any portion of this objection.[7]

21   _____

22         [7] As an initial matter, the Murrey Objection is, by all indications, untimely.  The
     Stipulation and Order Adjusting Deadlines (ECF No. 108) provides that (1) "Objections by any
23   settlement class member to the terms of the settlement or the certification of settlement class, the
     payment of fees to class counsel, or entry of final judgment **shall be heard and considered by**
24   **the Court only if, on or before August 30, 2013, such objector files with the court a notice of**
     **the objection**;" and (2) the objector must serve copies of the objection such that "all objections
25   **must be actually received by counsel for the settlement class on or before August 30, 2013**."
     ECF No. 108 (emphasis added); *accord* KCC Decl. Ex. A at Item 18 (Long Form Notice)
26   (requiring an "objection and any supporting papers must be mailed to and **actually received**" by
     the applicable deadline) (emphasis added). Although on its face the Murrey Objection is dated
27   August 28, 2013, it bears a date-stamp noting that it was received by the Court on September 3,
     2013 (*see* ECF No. 119, KCC Decl. Ex. G), and the docket entry for the Murrey Objection
28   reflects a filing date of September 3, 2013.  In addition, the parties' claims administrator did not
                                                                     (Footnote continues on next page.)

The $1.3 million award for attorneys' fees and expenses is not excessive for the reasons stated herein and in Plaintiffs' Motion for Attorneys' Fees. *See* ECF Nos. 115-116. Because the award of fees and expenses is separate and distinct from any benefit payable to the Settlement Class or the Murrey Objector, they are not aggrieved by any such award and lack Article III standing to challenge it. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (dismissing appeal for objector's lack of Article III standing to challenge separately negotiated and funded fee payment).

Even, assuming, *arguendo*, that Murrey has standing, the Murrey Objection is off-base because it ignores the information provided in the Notice (KCC Decl. Ex. A) at Item 17, which clearly stated that Plaintiffs' application for attorneys' fees and expenses would be available on the settlement website after August 9. This filing was made available immediately after filing with the Court as directed by the Court pursuant to *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). *See* ECF No. 108. This was completed nearly three weeks before the Murrey Objection was filed. The objection to the requested award of fees and expenses is wholly without merit and should be overruled.

The remaining points raised by the Murrey Objection lack merit. The Settlement is fair, reasonable and adequate under the standards of the Ninth Circuit. Because this Settlement affords Settlement Class Members the opportunity to obtain a complete refund of Qualified Game Currency Charges, it is unclear what more the Murrey Objection expects in order to make the Settlement "fair, reasonable and adequate." Similarly, the scope of the Released Claims is narrowly tailored to the claims as set forth in Section IV.F. below, so it is by no means overly broad. There is likewise no basis given to challenge the requirement for certification under Rule 23, and that this Court found to be satisfied when granting preliminary approval to the Settlement. *See* ECF No. 104. Thus, these bases for the Murrey Objection are similarly without merit and should be overruled.

(Footnote continued from previous page.)

receive the Murrey Objection until after the August 30, 2013 deadline. KCC Decl. ¶ 16 (Murrey Objection was received by KCC on September 3, 2013).

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

17

2.      **Jasinski Objection (ECF No. 113) (*see* KCC Decl. Ex G).**  The hand-written Jasinski Objection fails at the outset, as it does not establish proof of membership in the Class as required by Item 18 of the Notice (KCC Decl. Ex. A).  *See Moore v. Verizon Commc'ns, Inc.*, No: C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, at *33 (N.D. Cal. Aug. 28, 2013) (Armstrong, J.) ("It is well-settled that only class members may object to a class action settlement." (*citing Gould v. Alleco, Inc*., 883 F.2d 281, 284 (4th Cir. 1989))); *see also* Fed. R. Civ. P. 23(e)(5).  Absent this threshold showing of standing, the Jasinski Objection should be overruled.   Even if the Jasinski Objector is a Settlement Class Member, his objection to the award of fees and expenses fails for the same reasons as the Murrey Objection.  *See Glasser*, 645 F.3d at 1088.

The Jasinski Objection appears, incorrectly, to object to the limitation of a $5 or $30 recovery, and to the alleged burdens associated with completing the Claim Form.  The $5 Credit Relief provides a streamlined claims process as an alternative to filing a Claim Form for a full refund.  The $30 threshold, meanwhile, merely describes the level of damages at which a Class Member who currently has an iTunes account may elect to receive his or her refund in the form of cash rather than iTunes credit.  There is not a limitation on the actual damages that can be recovered under the Settlement; accordingly, the Jasinski Objection misunderstands the relief provided under the Settlement.  For this additional reason, the Jasinski Objection should be overruled.

3.      **Meyer Objection (ECF No. 109) (*see* KCC Decl. Ex G).**  The Meyer Objection suffers the same fatal flaw as the Jasinski Objection, as Meyer fails to establish standing as a member of the Settlement Class as required pursuant to Item 18 of the Notice (KCC Decl. Ex. A) and Rule 23(e)(5).  *See Moore*, 2013 U.S. Dist. LEXIS 122901, at *33.  Also like the Jasinski Objection, the Meyer Objection's purported understanding of the Settlement is directly contradicted by the settlement's plain terms available on the website, the FAQs on the settlement website and the Notice.  The Meyer Objection objects to Settlement Class Members only receiving a $5 store credit.  *See* ECF No. 109.  This objection completely ignores the Aggregate Relief of the Settlement, and as such, it should be overruled.

4.      **Newton Objection (ECF No. 111) (***see*** KCC Decl. Ex G).**  The Newton Objection opposes any award of fees and expenses over $50,000, and the award of the $1,500 stipends to the Class Representatives, suggesting they should only receive the $5 Store Credit for their efforts.  Disregarded by the Newton Objectors are the $62,286.16 in expenses incurred by Class Counsel in prosecuting this matter through July 2013; the thousands of hours spent prosecuting the litigation during that time; and the efforts undertaken by the Class Representatives to obtain this relief for the Settlement Class.  Although the details of the attorneys' fees, expenses and service awards were made available to the Settlement Class as stated expressly in the Notice (KCC Decl. Ex. A), the Newton Objectors chose to disregard this information and instead launch bald assertions with arbitrary recommendations for an award of fees, expenses and service awards.  This objection states nothing of substance and articulates no grounds for the objection, and should be summarily overruled.  *See Glasser*, 645 F.3d at 1088.

Like the Jasinski Objection, the Newton Objection also ignores the terms of the Settlement.  The relief to the Settlement Class is a full refund of all Qualified Game Currency Charges, but if the Settlement Class Member does not choose to identify those charges, a simple claim for a $5 Store Credit can be made in the alternative.  The Newton Objection disregards the Aggregate Relief, which can translate to hundreds or even thousands of dollars to some Settlement Class Members.  The Newton Objection is wholly without merit, and should be overruled.

5.      **Schutz Objection (ECF No. 112) (***see*** KCC Decl. Ex G).**  The Schutz Objection states no basis for the objection or any grounds upon which it is based.  Instead, the Schutz Objection criticizes the litigation from the perspective of "personal responsibility and parenting."  ECF No. 112.  While the omission of a legal basis requires this objection be overruled on its face, it should be noted that the Schutz Objection references the $2 or $3 purchase by their daughter as "no big deal."  *Id*.  Perhaps the Schutz Objectors' perspective would be different if their daughter had charged hundreds or thousands of dollars in In-App Purchases that would now be recoverable through this Settlement.

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

19

The benefit of a class action settlement is demonstrated by comparing the Schutz Objection and the Waddell Objection, discussed below.  The Schutz Objectors have the opportunity to participate in the benefits of the Settlement, but ostensibly chose not to do so in the name of "accountability and responsibility," and because only $2 or $3 in purchases is "no big deal."  The Waddell Objector, discussed below, is desperate for the right to participate in this Settlement to recover his $272.87.

>    **6.**    **Waddell Objection (ECF No. 110) (***see*** KCC Decl. Ex G).**  The Waddell Objection establishes that Mr. Waddell is unfortunately not a member of the Settlement Class, and the Waddell Objection accordingly should be overruled on its face.  *See Moore*, 2013 U.S. Dist. LEXIS 122901, at *33.  The Waddell Objection is essentially a request to expand the Class Period, which ends on May 2, 2013, to include his purchases between May 19-27, 2013.  Because the Waddell Objection's In-App Purchases occurred outside the time period covered by this Settlement, they are not covered by the Settlement and those potential claims are not being released here.

>    **F.**    **The Scope of the Settlement Release of Claims is Reasonable and Bounded by the Claims Asserted in the Litigation.**

Released Claims should only be those made in the operative complaint and those closely related thereto.  *See, e.g., In re Zoran Corp. Derivative Litig.*, No. C 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246, at *31 (N.D. Cal. Apr. 7, 2008).  The Release provided through this Settlement is so limited.  There are two limitations that operate upon a release in a class action, the definition of the class and the language of the release.  This case is about Qualified Game Currency Charges, defined in the Agreement to mean Game Currency charged to an iTunes account belonging to a Class Member by a minor without the Class Member's knowledge or permission.  *See* Agreement, § III.O.  The Settlement Class retains this same limitation.  *Id.* § IV.A.  This same language also binds the Released Claims to those of the Settlement Class for Qualified Game Currency Charges.  *Id*. § IV.B.  As the Settlement provides complete relief for claims relating to Qualified Game Currency Charges, a complete release of claims related to those charges is being provided in exchange.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.  Additionally, for the reasons set forth in Plaintiffs' Motion for Attorneys' Fees (ECF Nos. 115-116), Class Counsel further respectfully request an award of $1.3 million in attorneys' fees and expenses, plus an award of $1,500 to each Class Representative to reward them for their time and effort in this successful action.  These requests are reasonable and appropriate, and will in no way reduce the benefits provided to the Settlement Class.

Dated:  September 12, 2013          Respectfully submitted,

SIMON B. PARIS
PATRICK HOWARD
**SALTZ MONGELUZZI BARRETT &
BENDESKY PC**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA  19103
Telephone: (215) 575-3986
Facsimile: (215) 496-0999

By:  */s/ Simon B. Paris*
     SIMON B. PARIS


MICHAEL J. BONI
JOSHUA D. SNYDER
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Telephone: (610) 822-0200
Facsimile:  (610) 822-0206

*Co-Lead Counsel for the Settlement Class*

[No. 11-CV-1758-EJD] PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

21

Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382
Email:     jtabacco@bermandevalerio.com
            cheffelfinger@bermandevalerio.com
            aphillips@bermandevalerio.com

*Local Counsel for Plaintiffs*

### E-Filing Attestation

I, Anthony D. Phillips, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Simon Bahne Paris has concurred in this filing.

*/s/ Anthony D. Phillips*
Anthony D. Phillips