Simon Bahne Paris (admitted *pro hac vice*)
Patrick Howard (admitted *pro hac vice*)
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 575-3986
Facsimile: (215) 496-0999
Email: sparis@smbb.com
 phoward@smbb.com

Michael J. Boni (admitted 9/11/1992)
Joshua D. Snyder (admitted *pro hac vice*)
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206
Email: mboni@bonizack.com
 jsnyder@bonizack.com

*Co-Lead Counsel for Settlement Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE IN-APP PURCHASE LITIGATION | Master File No. 11-CV-1758-EJD <br><br> **CLASS ACTION** <br><br> **MOTION FOR POSTING OF AN APPEAL BOND TO SECURE PAYMENT OF COSTS ON APPEAL (FED. R. APP. P. 7) AND LEAVE TO CONDUCT DISCOVERY ON OBJECTOR, CINDY MURREY** <br> Date: January 10, 2014 <br> Time: 9:00 a.m. <br> Judge: Hon. Edward J. Davila <br> Location: San Jose Courthouse <br>     Courtroom 4 -5th Floor <br>     280 South 1st Street <br>     San Jose, CA 95113 |
| This Document Relates to: <br><br> All Actions | |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 10, 2014, at 9:00 a.m., or as soon as counsel may be heard[1] before the Honorable Edward J. Davila in Courtroom 4 in the United States Courthouse for the Northern District of California, 280 South First Street, San Jose, California 95113, Plaintiffs Garen Meguerian, Lauren Scott, Karen Koffman, Heather Silversmith and Twilah Monroe and the certified settlement class (collectively "Plaintiffs") will and hereby do move this Court for an Order requiring objector/appellant Cindy Murrey ("Murrey") to post a Federal Rules of Appellate Procedure Rule 7 ("Rule 7") appeal bond in the amount of $75,000 (the "Motion"). This amount consists of $25,000 in anticipated taxable costs and $50,000 in anticipated attorneys' fees Plaintiffs will incur in defending against Murrey's appeal (filed November 15, 2013) from this Court's October 18, 2013 Order Granting Final Approval of Settlement and Release and Granting Plaintiffs' Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards.

Plaintiffs concurrently move this Court for an Order granting Plaintiffs limited expedited discovery to establish that Murrey's appeal lacks merit, to determine whether Murrey is a Settlement Class Member, whether Murrey is capable of paying the cost of the requested bond, and whether Murrey will pay the appellees' costs if she loses her appeal.

This motion is based on the notice of motion and motion, Plaintiffs' memorandum of points and authorities in support thereof, the Declaration of Simon Paris and the exhibits thereto, all other pleadings and matters of record, and upon such oral and documentary evidence as may be presented at the hearing of this matter.

**STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4)**

1. Whether the Court should order objector and appellant Cindy Murrey to post a Rule 7 appeal bond in the amount of $75,000.

---

[1] Plaintiffs are concurrently filing an Application to Shorten Time and have been advised by the Court's deputy clerk that the Court can accommodate this motion on December 13, 2013, at 9:00 a.m.

2. Whether the limited expedited discovery that Plaintiffs are requesting in connection with this motion for an appeal bond should be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On October 18, 2013, the Court granted final approval of the settlement in this matter with much appreciated praise for the settlement, and the lawyers on both sides who negotiated this settlement. Under the settlement, notice was directly delivered to 99.99% of 28 million potential class members. Every class member was provided the opportunity to file a claim for reimbursement of 100% of the Qualified Charges in Game Apps.

This outstanding settlement is now under attack by a person who purports to be a member of the Settlement Class, Cindy Murrey. On November 15, Murrey filed a notice of appeal from this Court's order granting final approval of the settlement and Plaintiffs' attorneys' fee request ("Final Order") (Dkt. No. 127).[2] On November 18, Class Counsel emailed Murrey to inquire about a briefing schedule for this motion and discovery. Murrey did not respond, so Class Counsel called and left Murrey a telephone message on November 19. She did not return the call.

Within hours of that call, a notorious professional objector, Christopher Bandas ("Bandas") entered his appearance on behalf of Murrey in the Ninth Circuit. The involvement of Bandas—with a long track record as a serial objector and an established history of being sanctioned for his conduct in representing objectors—reveals the nefarious motivations behind the Murrey appeal. For sure, as recently as September 17, 2013, Judge Moskowitz in the Southern District found that Bandas and his client engaged in an ill motivated "scheme" and filed objections for the sole "improper purpose of obtaining a cash settlement in exchange for

---

[2] See Declaration of Simon Bahne Paris ("Paris Decl."), Ex. D.

withdrawing objections." *In re Hydroxycut Marketing and Sales Practice Litig.*, Case No. 09-md-2087-BTM 2013 U.S. Dist. LEXIS 133413, *71 (S.D. Cal Sept. 17, 2013).

The immediate requirement that Murrey, or her counsel, post an appeal bond will ensure that if such a scheme is unfolding here, Plaintiffs will be entitled to recover all of their costs in exposing it and protecting the interests of class members.

## II. BACKGROUND

### A. Settlement & Final Approval

The terms of the Settlement are set forth in the Stipulation of Settlement, as amended on March 8, 2013, which was preliminarily approved by the Court on May 2, 2013 (the "Agreement"), ECF No. 101-1.[3] As the Court aptly stated when granting preliminary approval, the relief provided under the Agreement "is adequate, if not exceptional." *See* Order Granting Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), ECF No. 104 at 7:3.

This Settlement affords every class member the opportunity for a full refund of In-App Purchases made by minors without the class member's knowledge or permission prior to May 2, 2013. There is little, if any, additional benefit that could have been accomplished for the Class through victory at trial. Under the proposed Settlement, every Settlement Class Member is eligible to receive iTunes store credit *or* a cash refund in an amount equal to the aggregate total of all Qualified Game Currency Charges. Alternatively, the Settlement Class Member may simply elect a $5.00 iTunes store credit, *or* a similar cash payment for those members who no longer maintain an iTunes account, upon submittal of a simple claim form.

Beyond this extraordinary monetary relief provided to Settlement Class Members, the notice program informed parents of the existence of parental controls available on their Apple device. Parents were made aware of the parental controls on the settlement website, stating: "Apple's parental controls may be set to disable In-App Purchases on an iOS device or to require

---

[3] Unless otherwise specified, all capitalized terms herein that are defined terms in the Settlement Agreement shall have the same meaning as in the Settlement Agreement.

a password before every In-App Purchase transaction. These parental controls allow for restriction of any In-App Purchases and/or the 15 minute window for making in-app purchases." Immediately following this statement, the settlement website provides a link to detailed instructions on how to implement these parental controls.[4]

The Preliminary Approval Order set deadlines and requirements for any objection to the proposed settlement as follows:

> Objections by any settlement class member to the terms of the settlement or the certification of settlement class, the payment of fees to class counsel, or entry of final judgment shall be heard and considered by the court only if, on or before August 23, 2013, such objector files with the court a notice of the objection, submits documentary proof that he or she is a member of the settlement class, states the basis for the objection, and serve copies of the objection and all supporting documents on all counsel for the settlement class, as designed above. **In order to be considered at the hearing, all objections must be actually received by counsel for the settlement class on or before August 23, 2013**.

ECF No. 104 at 8:28-9:7 (emphasis added). On June 14, 2013, the Preliminary Approval Order was modified, in relevant part, only to extend this deadline one week to August 30, 2013. ECF No. 108 at 2:7-14. Based on the Preliminary Approval Order, the Notice to the Class similarly required proof of membership in the Class and stated: "The objection and any supporting papers must be mailed to and actually received by the following two addresses [the Court and Claims Administrator] no later than August 30, 2013." ECF No. 121-1, Ex. A at No. 18.

In total, only seven objections were received from the universe of 28 million people who were provided with direct notice, one of which was *pro se* from Cindy Murrey. On October 18, 2013, the Court held a Final Approval Hearing, and concluded the proposed Settlement was fair, reasonable, and adequate. Ms. Murrey did not appear that hearing (nor did any other objector). At the conclusion of the hearing, the Court approved the settlement, finding the negotiations to have been conducted at arm's length, with the assistance of two respected mediators, the Hon.

---

[4] *See* https://www.itunesinapppurchasesettlement.com/CAClaimForms/AIL/faqs.aspx#q23 (Frequently Asked Question No. 23).

Daniel Weinstein (Ret.) and Catherine Yanni, Esq. of JAMS. *See* Oct. 18, 2013 Tr. at 20-21. In addition, the Court approved the award of counsel fees and reimbursement of costs, and service awards to class representatives, and overruled all objections, including Murrey's. *Id*. at 20-21; Final Judgment & Order Granting Final Approval Of Class Action Settlement; Award Of Attorneys' Fees, Costs And Service Awards To Class Representatives, ECF No. 127.

### B. Murrey Objection & Appeal

The Murrey objection was untimely. The Murrey objection purports to have been sent via Federal Express Priority Overnight on Wednesday, August 28, 2013. It was ***not***. (ECF No. 121-1, Ex. G). Instead, it was not sent until near close of business the next day, 4:33 p.m. on August 29, not August 28; and it was not sent via "Federal Express Priority Overnight" but rather sent via United States Postal Service – Priority Mail Express 1-Day™. *Id*. As such, the Murrey objection was not "actually received" by the Court or the Claims Administrator until September 3, 2013, after the August 30 deadline and in violation of the Preliminary Approval Order. *See* ECF No. 119, 121-1, Ex. G. The Murrey objection is invalid as untimely; and therefore, Murrey does not possess a right of appeal. *See* ECF No. 120, fn. 7; *see also Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002)(only "non-named class members who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal").

As to its contents, the Murrey objection is a short, *pro forma* objection that reflects little consideration, if any, of the actual terms of the Settlement. It cites no case law, and, indeed, reveals that its author failed to even become familiar with the contents of the settlement website before objecting.[5] Its conclusory statements offer no suggestion as to any additional benefit Murrey would have desired under the Settlement. The Murrey objection, which is largely boilerplate, likewise fails to identify the circumstances in which a minor made an in-app purchase charged to her iTunes account without her knowledge or permission.

---

[5] Murrey's objections asserts that she was unable to review the details of plaintiffs' fee application, stating that settlement references a $1.3 million fee request, "but gives no further information from which I can base an assessment of fairness." However, Plaintiffs' Motion for Attorneys' Fees and all supporting documents were posted on the Settlement Website on August 9, well prior to the Murrey objection, as expressly stated in the Notice at Item 17.

1    Nevertheless, on November 15, 2013, Murrey filed a *pro se* notice of appeal from this
2    Court's October 18, 2013 Final Judgment & Order Granting Final Approval of Class Action
3    Settlement; Award of Attorneys' Fees, Costs and Service Awards to Class Representatives
4    ("Final Order") (ECF No. 127). As referenced during the Final Approval Hearing, this is not the
5    first Murrey to file an objection. (Paris Decl. Ex E). In response to the Court's inquiry about
6    "Professional Objectors" at the final approval hearing, the Murrey objection was discussed and
7    Class Counsel identified a prior Murrey objection in a state court class action. (*Id*. at Ex. F).

8    In 2012, Michael Murrey, from the same address as Murrey, filed an objection and Notice
9    of Appeal in *Chambers v. Weber-Stephen Products, LLC et al*. (*Id*. at Ex. H ). The Michael
10   Murrey objection is strikingly similar, if not verbatim in large part, to the Murrey objection filed
11   here. As with Murrey here, the Michael Murrey objection was overruled by the trial court and
12   Michael Murrey filed an appeal to the California Court of Appeals, 4th Appellate District, and
13   was assigned case number D062669. The Michael Murrey appeal was dismissed by the court for
14   lack of prosecution just weeks after it was filed. (*Id*.)

15   Up until November 19, Bandas was not counsel of record for either Murrey objection,
16   both were submitted *pro se*. However, Bandas employs – or at least employed – Murrey's
17   daughter, Kathleen Murrey-Jackson. And recently, it has come to light from other Bandas
18   objections that he has a "troubling practice of orchestrating purportedly pro se objections" by
19   ghostwriting materials he knows will be presented to the Court. *See In re TFT-LCD (Flat Panel)*
20   *Antitrust Litig.*, Case No. 3:07-MD-1827 (N.D Cal.)(ECF No. 7162 at 6, 14). Plaintiffs should be
21   entitled to discover whether such unethical and unscrupulous practices occurred here between
22   Murrey and Bandas.

23   **IV. ARGUMENT**
24       **A.   Standard for Imposition of Fed. R. App. P. 7 Appeal Bond**
25   Rule 7 provides that "'the district court may require an appellant to file a bond or provide
26   other security in any form and amount necessary to ensure payment of costs on appeal.'" *Azizian*
27   *v. Federated Dept. Stores, Inc*., 499 F.3d 950, 954-55 (9th Cir. 2007); *Yingling v. eBay, Inc., No.*
28   C09-01733, 2011 WL 2790181, at * 1 (N.D. Cal. July 5, 2011) (same). The purpose of the rule is

to "'protect[ ] ... an appellee against the risk of nonpayment by an unsuccessful appellant.'" *Fleury v. Richemont North America, Inc.*, No. C-05-4525-EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008). "[T]he question of the need for a bond, as well as its amount, are left to the discretion of the trial court." *Id*. (citing Rule 7, 1979 advisory committee notes). When considering whether to require an appeal bond, district courts take the following three factors into account: "(1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; [and] (3) the merits of the appeal."[6] *Id.*

### B. All Factors Weigh in Favor of Imposing an Appeal Bond

#### 1. Murrey's Financial Ability to Post a Bond

Where there is "no indication that [a] plaintiff is financially unable to post bond ... this factor weighs in favor of a bond." *Fleury*, 2008 WL 4680033, at *7; *Yingling*, 2011 WL 2790181, at *2 n.8. (same). Bare assertions of inability to pay are not sufficient to avoid payment of a bond by an objector to a settlement who desires to appeal the settlement and delay relief to the class. *Fleury*, 2008 WL 4680022 at *7; *In re: Cardizem CD Anti. Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to propose an alternative or provide evidence that the bond was improper resulted in dismissal of appeal).

Plaintiffs are unaware of any inability by Murrey to post an appropriate bond. To the contrary, pursuant to Class Counsel's preliminary investigation, Murrey owns a home in Texas, several vehicles, a boat trailer, and is a partner in a business, "Just Because Collectibles" located

---

[6] While many courts typically consider a fourth factor, namely, whether the appellant has shown any bad faith or vexatious conduct, in *Azizian*, the Ninth Circuit concluded that the district court should not base an appeal bond on this factor because pursuant to Federal Rule of Appellate Procedure ("FRAP") 38, an appellee can be awarded damages and single or double costs if the appellate court were to determine that the appeal was frivolous. 499 F.3d at 960 (indicating that Rule 7 is not intended to provide a penalty to address the frivolity of an appeal, which is a decision best left for the courts of appeal). Nevertheless, bad faith, frivolity and/or vexatious conduct warrants an increased level of skepticism when reviewing the merits of an objection submitted by a professional objector. *See* 5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg On Class Actions (4th ed. 2009), §15:37. Whether an appellant has shown bad faith or vexatious conduct is also considered with the second factor regarding the risk that the appellant would not pay the appellee's costs if the appeal loses. *See In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010). Thus, for these reasons, Plaintiffs briefly address Murrey's bad faith, frivolous, and/or vexatious conduct.

at 19 Quiet Oak Circle, Spring, Texas 77381-3161. (*See* Paris Decl. ¶19, Ex. I ) Additionally, to the extent Murrey contends either she or Bandas are unable to post a bond, Plaintiffs seek to conduct her deposition to explore that issue. *Id* at ¶20. Thus, any claim that she cannot post a bond must be tested through the formal discovery that Plaintiffs are requesting.

### 2. Risk that Murrey Would Not Pay Appellees' Costs

Both Murrey and Bandas are residents of Texas. When the appellants are located in another part of the country, as here, Class Counsel would be required to institute collection proceedings to recover their costs from a recalcitrant obligor in a foreign jurisdiction. These circumstances weigh in favor of a Rule 7 appeal bond. *See In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. July 20, 2010); *Fleury*, 2008 WL 4680033, at *7. Class Counsel would have to travel to Texas to enforce the Ninth Circuit's order imposing costs unless Murrey posts a bond.

In addition, Murrey appears to be embarking upon a career path as a professional objector. In 2012, Michael Murrey, listing the same address as Murrey used here, filed a meritless objection in *Chambers v. Weber-Stephen Products, LLC et al*. (*See* Paris Decl. at ¶¶14-15; Ex. F, H). After the trial court rejected Michael Murrey's objection, he filed a notice of appeal with the California Court of Appeals, 4th Appellate District, which was dismissed in weeks for lack of prosecution. (*Id*.) The Murrey objection here and the Michael Murrey objection are so similar that they are verbatim in parts. (*Id*. at ¶14); *see* Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges (2009), at 15 (asking federal judges to "[w]atch out ... for 'canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests'").

Seemingly not by coincidence, on November 19, 2013, Bandas entered his appearance on behalf of Murrey. Murrey's daughter, Kelly Murrey-Jackson, was at least for some point an employee of Bandas. Bandas is widely known in the Ninth Circuit, and other courts across the nation, as a professional serial objector. The addition of Bandas makes the true motivations of Murrey perfectly clear: they are attempting to hold the benefits of this remarkable settlement hostage by filing an objection and a last minute appeal, to extort a cash settlement from the Class.

Bandas has been reprimanded or sanctioned by many courts for improper conduct related to his objections and appeals. The Ninth Circuit, for example, has previously dismissed appeals filed by Bandas for failure to file an opening brief and failure to file appellate fees. *See, e.g., Embry v. ACER America Corp.*, No. 09-1808, 2012 WL 3777163, at *1 (N.D. Cal. Aug. 29, 2012) ("On April 18, 2012, the Ninth Circuit dismissed the appeal for failure to pay the appeal fees"); *Chavez v. Blue Sky Natural Beverage Co.*, No. 12-16520, slip op. (9th Cir. Dec. 11, 2012) ("this appeal is dismissed for failure to file the opening brief"); *Morgan v. Clearwire Corp.*, No. 13-35038, slip op. (9th Cir. April 22, 2013) (granting summary affirmance describing the issues raised by Bandas as "so insubstantial as not to require further argument.")). At bottom, Bandas has been described by one a federal court as:

> Hav[ing] a documented history of filing notices of appeal from orders approving …class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.

*In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 06-225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010). Given the transparent motive behind Murrey's appeal, there is a substantial risk that this notorious professional objector will resist paying any costs imposed by the Ninth Circuit. *See Wal-Mart*, 2010 WL 786513, at *1 (where "Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling the class ... persuades the Court that collecting costs from the four Objectors would be extremely difficult if not unlikely.").

Thus, the second *Fleury* factor also weighs heavily in favor of requiring Murrey to post an appeal bond.

**3.**     **Merits of the Murrey Appeal**

Finally, the Court must consider the merits of Murrey's appeal. *Fleury*, 2008 WL 4680033, at * 8. Under Fed. R. Civ. P. 23(e), a district court has broad discretion to determine whether a class action settlement is fair, adequate, and reasonable, based on the law, facts and circumstances of the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The

Court has done so here, considered the Murrey objection, and rejected it. "An approved settlement will not be upset unless the district court abused its discretion." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *see also Azizian*, 499 F.3d at 955 ("we ordinarily review a district court's attorney's fees decision for an abuse of discretion.").

### a. Murrey lacks standing to appeal because her objection was untimely in violation of the Order Granting Preliminary Approval.

The deadline for all objection to be "actually received" by the Court and Class Counsel was August 30, 2013. The Murrey objection was *not* sent via Federal Express Priority Overnight on Wednesday, August 28, 2013, as it represents. *See* ECF No. 119. Instead, it was not sent until near close of business the next day, 4:33 p.m. on August 29 - *not* August 28 - and it was *not* sent via "Federal Express Priority Overnight" but rather sent via United States Postal Service – Priority Mail Express 1-Day™. ECF No. 121-1, Ex. G. It is indisputable that neither the Court nor Class Counsel received the Murrey objection on or before August 30, 2013. (Paris Decl. at ¶¶5-6). Instead, as is plainly established by the record, the Murrey objection was received by both the Court and Class Counsel several days later, on September 3, 2013. *Id.*; *see also*, ECF Nos. 119, 120, fn 7, 121-1, Ex. G.

This failure was fatal to the Murrey objection, and considered by the Court during the Final Approval Hearing. *See* ECF No. 120, fn 7. Because the Murrey objection was untimely, it failed to preserve any issue raised by the objection for appeal. Accordingly, Murrey lacks standing to appeal the Final Order. *Devlin,* 536 U.S. at 14 (only "non-named class members who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal").

### b. Murrey's Appeal is unlikely to prevail, given that her assertions concerning class membership are highly suspect.

To have standing to assert the Murrey objection and file the Murrey appeal, Murrey must establish she is an aggrieved member of the Class. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. Cal. 1994)("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member."). In order to be an aggrieved member of the Settlement Class, Murrey must have paid Apple for a charge to her iTunes account

10

Case5:11-cv-01758-EJD Document132 Filed11/20/13 Page12 of 20

made by a minor in one or more Qualified Apps without Murrey's knowledge or permission during the class period. (*See* Paris Decl. at ¶4); ECF. Nos. 104, 127 (Stipulation of Settlement). Murrey has not identified the minor who she contends made the purchase without her knowledge or permission to establish her membership in the Class, nor provided any other information concerning the circumstances of the transaction(s) that give rise to her membership in the Class. Put simply, the Murrey objection provides no proof of membership in the Class.[7]

While at the same time, Bandas – Murrey's belated attorney- has been found by a Florida Court to have "engag[ed] in a conspiracy with his clients and co-counsel to extort money from class members and class counsel, through a similar practice of objecting to the proposed settlement." (*Id*. at Ex. J, pg. 6). As recently as September 17, 2013, Chief Judge Moskowitz in the Southern District of California struck objections filed by Bandas because after an evidentiary hearing it was clear that the objector had "bad motive" and engaged in a "scheme" with Bandas for the sole "purpose of obtaining a cash settlement in exchange for withdrawing objections." *See In re Hydroxycut Marketing and Sales Practice Litig.*, 2013 U.S. Dist. LEXIS 133413, at *71.

Based on the preliminary investigation of Class Counsel, coupled with Bandas' historical conduct, and Chief Judge Moskowitz's recent opinion – ***just two months ago*** - Murrey's standing as an aggrieved class member is dubious. Indeed, *any* inaccuracy in any of the three statements

---

[7] At the same time, Murrey filed a claim for the $5 iTunes Store credit, attesting to the following statement:

> 1. I paid for game currency that a minor charged to my iTunes account in one or more Qualified Apps without my knowledge or Permission;
>
> 2. I did not knowingly enter my iTunes password to authorize any purchase(s), and I did not give my password to the minor to make any such purchases(s); AND
>
> 3. I have not already received a refund from Apple for these charges.

ECF No. 119.

11

1  by Murrey (paid for in-app purchase; made by minor; without knowledge and permission)
2  removes her from the Class, and therefore, would obviate her right to appeal.
3        Class Counsel's investigation indicates that Murrey has *no* minor children, but rather has
4  two adult daughters: one in college, the other newly married. (Paris Decl. at ¶9). Murrey also
5  seemingly has *no* grandchildren. *Id*. On November 18, Class Counsel requested Murrey identity
6  the minor who made the subject purchases, but that request went ignored. (*Id* at ¶9). Absent a
7  prompt showing that the qualifying purchase was made by a minor, Murrey is not in the Class,
8  and her objection should be stricken.
9        Additionally, to demonstrate the purchase was without Murrey's knowledge or
10 permission, Murrey must show she did not authorize the purchase or provide the minor with the
11 password for the purchase. Murrey has not done so. Again, absent a showing that the qualifying
12 purchase by a minor was without Murrey's knowledge or permission, Murrey is not in the Class
13 and her objection should be stricken.
14       As discussed below, Plaintiffs' seek expedited discovery on the threshold issue of class
15 membership, or, in the alternative, request testimony from Ms. Murrey and her counsel on these
16 matters under oath in open court during a hearing on this motion.
17       **c.**    **The Murrey appeal can show no abuse of discretion by the Court.**
18       The Murrey Objection raises the following issues: (i) the $1.3 million fees and expense
19 award is excessive; (ii) insufficient detail about the fee request was provided to objectors in
20 advance of the deadline for objections; (iii) the Settlement Class has not met its burden that the
21 Settlement is fair, reasonable and adequate; (iv) the release is overly broad; and (v) the Settlement
22 Class does not satisfy Rule 23. The Murrey Objection fails. It is entirely devoid of any factual or
23 legal basis to substantiate any of the complaints.
24       (i)    <u>The $1.3 million fees and expense award is not excessive</u>
25       The $1.3 million award for attorneys' fees and expenses is not excessive for the reasons
26 stated in Plaintiffs Motion for Final Approval and in Plaintiffs' Motion for Attorneys' Fees,
27 which are incorporated herein by reference. *See* ECF Nos. 115-116, 120. Because the award of
28 fees and expenses is separate and distinct from any benefit payable to the Settlement Class or to

Murrey, she lacks standing to object or appeal to this award. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (dismissing appeal for objector's lack of Article III standing to challenge separately negotiated and funded fee payment).

(ii) <u>Extensive details about the fee request was posted on the settlement website and filed with the Court three weeks before the deadline for objections</u>

Murrey asserted this objection on September 3, 2013, without even reviewing the settlement website where Plaintiffs' Motion for Attorneys' Fees and all supporting documents were posted since August 9, as expressly stated in the Notice at Item 17. There is no legal or factual basis in the record for this objection.

(iii) <u>The Settlement is fair, reasonable and adequate</u>

The entire sum of this objection is as follows: "Specific objection is made that the proponents of this settlement have <u>not</u> met their burden to show that the settlement is fair, reasonable, and adequate." ECF No. 119 at 2. This objection states no basis in law or fact. It is worthless to the Court, and similarly baseless on appeal. *See Sckolnick v. Harlow*, 820 F.2d 13, 14 (1st Cir. 1987) (summarily rejecting two of the appellant's three issues on appeal because the issues were not brought "to the attention of the district court") Because this Settlement affords Settlement Class Members the opportunity to obtain a complete refund of Qualified Game Currency Charges, it is unclear what more Murrey could possibly expect in order to make a Settlement "fair, reasonable and adequate." This is especially problematic where Murrey has articulated no such basis for the district court, and cannot now manufacture one for the Ninth Circuit.

(iv) <u>The release is not overly broad.</u>

Again, without explanation, Murrey states only that "Objection is made to the overly broad release." ECF No. 119 at 2. Released Claims should only be those made in the operative complaint and those closely related thereto. *See, e.g., In re Zoran Corp. Derivative Litig.,* No. C 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246, at *31 (N.D. Cal. Apr. 7, 2008). The Release here is properly limited. There are two limitations that operate on a release in a class action, the

definition of the class and the language of the release. This case is (and always was) about Qualified Game Currency Charges, defined in the Agreement to mean Game Currency charged to an iTunes account belonging to a Class Member by a minor without the Class Member's knowledge or permission. *See* Agreement. § III.O. The Settlement Class retains this same limitation. *Id*. § IV.A. This same language also limits the Released Claims to those of the Settlement Class for Qualified Game Currency Charges. *Id.* § IV.B. As the Settlement provides complete relief for the claims relating to Qualified Game Currency Charges, Apple was afforded a complete release of those claims.

        (v)  <u>The Settlement Class satisfies Rule 23</u>

  There is likewise no basis articulated that could challenge the requirement for certification under Rule 23, that this Court preliminarily found to be satisfied when granting preliminary approval to the Settlement. *See* ECF No. 104. The Court confirmed this decision when granting Final Approval. ECF No. 127 at ¶6. Murrey's one-word recitation of the requirements of Rule 23 and asserting with absolutely nothing else that these requirements were not satisfied is baseless and without merit. Just like the Murrey appeal.

  **C.**  **Standard for the Amount of a Rule 7 Appeal Bond**

  Rule 7 provides that the court may require a bond in "any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Ninth Circuit has held that the "costs" referred to in Rule 7 include all of the following identified in Fed. R. App. P. 39(e):

    (1)  the preparation and transmission of the record;

    (2)  the reporter's transcript, if needed to determine the appeal;

    (3)  premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

    (4)  the fee for filing the notice of appeal.

Fed. R. App. P. 39(e). In addition, the Ninth Circuit has held that "costs other than those identified in Fed. R. App. P. 39 can qualify as 'costs' for purposes of Rule 7 if they are so defined by some positive law, such as a fee-shifting statute." *Fleury*, 2008 WL 4680033, at * 8 (*citing Azizian*, 499 F.3d at 958) ("[T]he costs identified in Rule 39(e) are among, but not necessarily the

only, costs available on appeal [for purposes of Rule 7]."). For example, "the term costs appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorneys' fees," (*id*.), and additional administrative costs the class will incur as a result of the appeal. *See In re Broadcom Corp. Sec. Litig.*, No. SACV-01-275-DT(MLGx), 2005 U.S. Dist. LEXIS 45656, *11-*12 (C.D. Cal. Dec. 5, 2005) (including additional costs of administration as part of a Rule 7 bond).

Rule 7 does not expressly require Plaintiffs to make any showing of costs for a bond motion. *See* Rule 7; *see also In re Ins. Brokerage Antitrust Litig.*, MDL 1663, No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 02, 2007) (finding that Rule does not require any "showing of costs for a bond motion."). However, courts routinely apply $25,000-$50,000 as a minimum, and often substantially more.[8]

Here, in addition to the printing and administrative costs associated with the expected appeals, it is likely that Plaintiffs will move to dismiss the appeal (see 9th Cir. R. 27-11) and/or moving for summary affirmance (9th Cir. R. 3-6), and moving to impose monetary sanctions against Murrey, if and when her appeal is ultimately found to be frivolous. *See* Fed. R. App. P. 38; 28 U.S.C. 1912; *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 514 (9th Cir. 1978). Such motions involve a substantial amount of time and expense, including filing fees and the printing and copying of briefs and other submissions. Plaintiffs also anticipate that they will incur additional costs related to conducting discovery in relation to the appeal, not to mention

---

[8] *See In re Wal-Mart*, 2010 WL 786513, at *2 (ordering that each or the four objectors post a separate $500,000 Rule 7 bond); *Gemelas v. Dannon Co., Inc., No*. 1:08 CV 236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010) ($275,000 appeal bond imposed); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DR (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-*11 (ordering objector to post appeal bond in excess of $1.2 million in response to appeal from final order approving class action settlement); *Barnes v. FleetBoston Fin. Corp*., 2006 U.S. Dist. LEXIS 71072, *4, *8-*9 (D. Mass. Aug. 22, 2006) (ordering objector to post Rule 7 bond in the amount of $645,111.60); *In re Initial Pub. Offering*, 721 F. Supp. 2d 210, *5 (assessing $25,000 on settlement objectors for cost aspects of Rule 7 bond); *In re Insurance Brokerage*, 2007 WL 1963063, at *3-*5 (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent); *In re Compact Disc Minimum Advertised Price Anti. Litig.*, MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) ($35,000 appeal bond); *In re Currency Conversion Fee Anti. Litig.*, No. 01-01409, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) ($50,000 appeal bond)

incremental administration costs the parties may incur as a result of Murrey's appeal. Accordingly, for this component of costs, Plaintiffs anticipate expending about $25,000 (or more), plus interest. (*See* Paris Decl. ¶ 17).

Plaintiffs also request that reasonably anticipated counsel fees be included as component of the bond. In *Azizian v. Federated Dep't Stores, Inc*., 499 F.3d 950, 958 (9th Cir. 2007), the Ninth Circuit held "that the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." Under Cal. Civ. Proc. Code § 1032(b), "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." The items "allowable as costs under Section 1032," include "Attorney's fees, when authorized by . . . Statute." Cal. Civ. Proc. Code § 1033.5(a)(10)(B).

Cal. Civ. Proc. Code § 1021.5 provides that

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Plaintiffs request an additional $50,000 for counsel fees, based on a conservative estimate of time to be expended in appellate proceedings, *Azizian*, 499 F.3d at 961 (9th Cir. 2007) ("we hold that security for appellate attorney's fees may be included in a Rule 7 bond"), for a bond in the aggregate amount of $75,000.

**D. In Addition, Expedited Discovery is Necessary Concerning Murrey's Standing and Ability to Pay the Bond**

Plaintiffs are immediately prepared to conduct formal expedited discovery, including depositions and written discovery to permit Class Counsel to establish that Murrey is a member of the Class, and capable of paying the cost of the requested bond. The requested expedited

1  discovery will include no more than 10 requests for production of documents, and the deposition
2  of Murrey, and the minor, if necessary. (Paris Decl. at ¶22).

3  With the suspicious relationship between Murrey and Bandas, combined with Bandas'
4  history of suspect objections, Class Counsel will also seek discovery from Bandas relating to (i)
5  the Murrey objection and his involvement prior to his entry of appearance on November 19; (ii)
6  prior objections in state or federal court by Murrey, relatives of Murrey or Bandas to other class
7  action settlements; (iii) any fee sharing arrangements between Bandas and Murrey in relation to
8  the Murrey objection, or other objections to class actions on behalf of – or referred by – Murrey
9  or a relative of Murrey; and (iv) any settlements or payouts that Bandas or Murrey have received
10 in return for withdrawing an objection or appeal.  Similar discovery is frequently granted from
11 professional objectors and their clients. *See In re TFT-LCD Flat Panel Antitrust Litig*., 2013 U.S.
12 Dist. LEXIS 23109 (N.D. Cal. Feb. 19, 2013); *In re Law Office of Jonathan E. Fortman, LLC*,
13 No. 13MC00042, 2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013); *Sullivan v. Kelly*
14 *Services, Inc.*, No. 08cv3893 (N.D. Cal. Aug. 10, 2011); and *In re Hydroxycut Mktg. & Sales*
15 *Practices Litig.*, No. 09md2087 BTM, 2013 U.S. Dist. LEXIS 61674 (S.D. Cal Apr. 29, 2013).

16 To be sure, a Court in this District in *In re: Cathode Ray Tube Antitrust Litig*., concluded
17 as follows:

> Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct. *See* Dkt. No. 1089-1 (Appendix A thereto listing courts' comments regarding Bandas's conduct). [Attached to Paris Decl. at Ex. J] In light of these facts and questions about the bona fides of Hull's objections, IP Plaintiffs justifiably served the discovery on Hull in order to explore not only the bases for Hull's objections, but to explore his relationship with Bandas and his practices with regard to asserting settlement objections.

24 281 F.R.D. 531, 532 (N.D. Cal. 2012).

25 The expedited discovery sought here would be limited to confirm there is not another
26 misrepresentation or mistake in the Murrey objection as to membership in the Class, the
27 involvement of Bandas, the "serial" objector, the relationship between the two including
28

Murrey's daughter status as a Bandas employee, and the past abuse by Bandas and Murrey of the objection and appellate process. In addition, to the extent that Murrey and Bandas contest ability to pay the bond, discovery will permit Plaintiffs to properly and thoroughly examine Murrey's ability to post the requested bond, pay the appellees' costs in opposing the appeal.

As an alternative to expedited discovery, Class Counsel requests the taking of sworn testimony during the hearing on these matters. Prompt determination of these factual issues will ensure that Bandas, who has been found to have engaged in "scheme[s]" where objections are filed "for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections," is not permitted to abuse the appellate process again to the determinant of 30,000 claimants anticipating settlement benefits should such tactics succeed in delaying settlement administration, all while brazenly wasting judicial resources.

**IV. CONCLUSION**

The Court has ample legal and inherent authority to require Murrey to post a Rule 7 bond. The Court has referred to this settlement as "exceptional," and that was evidenced by the response of the Class. Remarkably, this professional objector and his employee's mother have seen fit to file pro forma one sentence objections, not appear at the Final Hearing, and appeal the Final Order approving this exceptional settlement. The motives of this Texas twosome, Murrey and Bandas, are clear, and Plaintiffs request a substantial bond to insulate against their efforts to dodge judgment after this exercise is over. Thus, Plaintiffs respectfully request that the Court enter an order requiring the immediate posting of an appeal bond in the amount of $75,000 and an order granting Plaintiffs leave to conduct the limited discovery—or directing Murrey and Bandas to appear at the motion hearing to provide testimony subject to cross-examination-- requested herein.

//

//

//

//

Respectfully submitted this 20th day of November 2013,

        SIMON B. PARIS
        PATRICK HOWARD
        **SALTZ MONGELUZZI BARRETT &**
        **BENDESKY PC**
        One Liberty Place, 52nd Floor
        1650 Market Street
        Philadelphia, PA 19103
        Telephone: (215) 575-3986
        Facsimile: (215) 496-0999

        By:    */s/ Simon Bahne Paris*
            SIMON B. PARIS

        Michael J. Boni
        Joshua D. Snyder (admitted *pro hac vice*)
        **BONI & ZACK LLC**
        15 St. Asaphs Road
        Bala Cynwyd, PA 19004
        Telephone: (610) 822-0200
        Facsimile: (610) 822-0206
        Email: mboni@bonizack.com
                jsnyder@bonizack.com

        *Plaintiffs' Co-Lead Counsel for the Settlement Class*